Gordon Scott LEVEY, Plaintiff
Below, Appellant,

v.

BROWNSTONE ASSET MANAGE-
MENT, LP, Brownstone Investment
Partners, LLC, Pinebank Investment
Partners, LLC, Pinebank Asset Man-
agement, LP, Douglas Lowey, Oren
Cohen, and Barrett Naylor, Defen-
dants Below, Appellees.

No. 551, 2012.

Supreme Court of Delaware.

Submitted: July 3, 2013.
Decided: Aug. 27, 2013.
Reargument Denied Oct. 1, 2013.

James S. Green, Sr. (argued) and Jared T. Green, Esquires, Seitz, Van Ogtrop & Green, P.A., Wilmington, Delaware; Of Counsel: David T. Shulick, Esquire, Shulick Law Offices, Philadelphia, Pennsylvania, for the Appellant.

Collins J. Seitz, Jr., David E. Ross (argued), and Eric D. Selden, Esquires, Seitz Ross Aronstam & Moritz LLP, Wilmington, Delaware, for the Appellees.

Before HOLLAND, BERGER, JACOBS, RIDGELY, Justices, and BRADY, Judge,* constituting the Court en Banc.

JACOBS, Justice:

Gordon Levey, the plaintiff-below ("Levey"), appeals from a Court of Chancery order granting summary judgment and dismissing his action on the ground of laches by analogy to the statute of limitations. Levey claims that the Court of

Chancery erred as a matter of law on both substantive and procedural grounds. We find that the specific claims actually advanced by Levey lack merit. Nonetheless, our independent review discloses that the judgment must be reversed, and the case remanded for further proceedings in the interest of justice.

## FACTS AND PROCEDURAL BACKGROUND

The material facts are undisputed. Defendants Douglas Lowey ("Lowey") and Barrett Naylor ("Naylor"), as well as Levey, were members of Brownstone Investment Group, LLC ("Brownstone") for many years. Around July 2004, Lowey and Defendant Oren Cohen ("Cohen") formed Brownstone Investment Partners, LLC, a Delaware limited liability company ("BIP"), and Brownstone Asset Management LP, a Delaware limited partnership ("BAM").[1] Lowey and Cohen, who owned directly or indirectly 90% of BIP and BAM, invited Levey and Naylor each to become 5% non-managing owners of those two entities. Both accepted.[2]

On January 26, 2006, Levey announced that he was leaving Brownstone, BIP, and BAM (collectively, the "Brownstone Entities"). That same day, he surrendered his corporate charge card, building identifica-tion card, and office keys. Five days later, on January 31, 2006, the Defendants filed a lawsuit against Levey in the United States District Court for the Southern District of New York ("Southern District").[3] The Defendants advanced claims that, although not relevant here, arose out of Levey's voluntary departure from the Brownstone Entities.[4] On February 23, 2006,[5] Levey, through counsel, filed an answer and counterclaim, alleging that he was "a member and one-third owner of [Brownstone] and [was] therefore entitled, under a breach of contract theory, to the return of his capital account as well as a cash payment equal to one-third of the company's value."[6] Thus, as early as February 23, 2006—the date Levey filed his answer and counterclaim in the Southern District action—the Defendants were on notice that Levey was formally claiming entitlement, in a court of law, to the return of his capital investment in BIP and BAM, plus a cash payment in connection with his voluntary departure from Brownstone.[7]

On January 25, 2007—almost one year after filing his Southern District answer and counterclaim—Levey wrote a letter to the defendants, formally demanding payment of the value of his claimed interests in the Brownstone Entities, in particular BIP and BAM. In his letter, Levey's coun-

---

1. Those two entities were formed to manage a hedge fund, Brownstone Partners Catalyst Fund, LLC, which focused on corporate credit instruments.

2. Lowey, Cohen, Naylor, BIP, and BAM are the named defendants in this case.

3. See *Brownstone Inv. Grp., LLC v. Levey*, 468 F.Supp.2d 654 (S.D.N.Y.2007).

4. See id.

5. See *Brownstone Inv. Grp., LLC v. Levey*, 514 F.Supp.2d 536, 547 (S.D.N.Y.2007). The Southern District opinion incorrectly recites the date of Levey's counterclaim as February

23, 2007. The actual date of filing was February 23, 2006.

6. See *Brownstone Inv. Grp., LLC*, 468 F.Supp.2d at 658.

7. Levey's Southern District counterclaim—identical to the claim he advances in this Chancery action—was asserted within the three-year limitations period prescribed by Delaware law. 10 *Del. C.* § 8106. After his departure, Levey did not receive any distributions from BIP or BAM, although he believed the Defendants were still making annual distributions to the equity interest holders of those two entities.

sel threatened to pursue "the full range of available legal remedies" if Levey's claim was not satisfactorily addressed. In their February 15, 2007 response, the Defendants took the position that Levey no longer had any legal interests in BIP and BAM, or any basis to believe that he any longer held such interests. In reply, Levey's counsel threatened that, unless there were prompt settlement discussions, he would seek to enforce Levey's rights through "appropriate legal action."

Shortly thereafter, on February 28, 2007, Levey filed a motion to stay the pending Southern District action and to compel the Defendants to submit to arbitration before the National Association of Securities Dealers ("NASD").[8] On September 17, 2007, the Southern District granted Levey's motion, holding that the Defendants were subject to mandatory NASD arbitration.[9] It then ordered the case closed.[10]

In compliance with the Southern District order, on February 15, 2008, Levey filed a formal demand for arbitration before the Financial Industry Regulatory Authority, Inc. ("FINRA"), the successor to the NASD.[11] In his arbitration demand, Levey asserted the identical claim he had earlier raised in his counterclaim in the Southern District action. Specifically, Levey alleged that he was "entitled to a return of his Brownstone capital account ... and to a

return of any capital amounts held in his name by either BIP or BAM." He claimed that "[a]s to Brownstone, [he was] entitled to receive a cash payment equal to 33% of the value of the company, as fair compensation for his partnership share. As to BIP and BAM, [he claimed to be] entitled to receive a cash payment equal to 5% of the value of these two entities...."

On June 24, 2008, however, the FINRA arbitration panel informed the parties that the Defendants were not compelled by the Rules of FINRA Dispute Resolution to arbitrate disputes with Levey in that forum. The panel further advised Levey to pursue his claims "in another forum which does have jurisdiction" over the Defendants.

Rather than acting on this advice promptly, Levey waited more than two years—until August 12, 2010—to commence this lawsuit in the Court of Chancery. On April 4, 2011, the Court of Chancery dismissed with prejudice all the claims in Levey's amended complaint, except for one: his claim for distributions made by BIP and BAM from and after August 12, 2007—i.e., for his share of BIP and BAM distributions made during the three years immediately preceding the filing of the Chancery action.[12] Thereafter, Levey filed a second amended complaint, claiming that he was entitled to receive "his proportionate share of dividends or

---

8. *Brownstone Inv. Grp., LLC,* 514 F.Supp.2d at 549.

9. *Id.* at 546.

10. *Id.* at 546, 554. The Southern District adopted, in its entirety, a Magistrate Judge's report and recommendation, which "conclude[d] that the claims and counterclaims between [the Brownstone Entities] and Levey, as well as the third-party claims against Douglas Lowey and Naylor, are subject to mandatory arbitration under the NASD Code of Arbitration." *Id.* at 546, 554.

11. NASD was restructured and succeeded by FINRA in July 2007.

12. BIP was renamed Pinebank Investment Partners, LLC ("PIP"), and BAM was renamed Pinebank Asset Management, LP ("PAM"), sometime in 2010. PIP and PAM are the successors-in-interest to BIP and BAM. For ease of understanding, however, we consistently refer to the entities by their original names, BIP and BAM.

net income distributions" from BIP and BAM based on his 5% ownership interest in those two entities. On July 30, 2012, the Defendants moved for summary judgment, claiming that Levey's claim was barred by the doctrine of laches by analogy to the statute of limitations.

Following oral argument on September 27, 2012, the Court of Chancery, in a bench ruling and order, held that Levey knew as of January 25, 2007 that he had a legal claim against the Defendants, yet he did not pursue it during the ensuing three-year analogous period of limitations. The court also opined that Levey had a "reasonably conceivable" claim to his ownership stake in BIP and BAM, or alternatively, to their cash values, either as a matter of a withdrawal right or as compensation. The court noted that:

> [I]n terms of surviving a motion to dismiss, I think [Levey's] claim certainly would.... It rankles to be in a position now where you see a claim that seems to be fairly litigable and where someone seems to have been largely deprived of his ability to litigate the merits of that claim or at least have a day in court....
>
> [T]here are plenty of indicia here that give the suggestion that Mr. Levey was treated unjustly.... [I]t seems to me that there's a strong inference that he was treated ill.... I would wish that he had the opportunity to litigate whether or not he was treated ill.

The trial court concluded: "I don't think Mr. Levey has had the chance to have his day in court [and] it seems that he has been ill-used." Even so, based on the undisputed facts of record, the court regarded itself as obligated to apply laches by analogy to the statute of limitations.

On that basis, and despite its regret, the court granted summary judgment in favor of the Defendants.

This appeal followed.

## ANALYSIS

On appeal, Levey claims that the Court of Chancery erred in five separate respects. Only one of Levey's claims is properly before this Court. The other four are not, because they relate to the merits of Levey's claim, which the Court of Chancery never reached. Levey's sole cognizable claim properly before us is that the Court of Chancery erroneously granted summary judgment for the Defendants by holding that his claim was time-barred under laches by analogy to the period of limitations. That claim is the subject of this appeal.

 Summary judgment is appropriate where the record demonstrates that there is no issue of material fact and that the moving party is entitled to judgment as a matter of law.[13] There are no disputed fact issues that pertain to either the statute of limitations or the laches defenses. It also is uncontroverted that Levey's claim sounds in contract, and that the analogous statute of limitations is 10 *Del. C.* § 8106, under which a breach of contract action must be brought within three years from the date that the cause of action accrued.[14] This Court reviews the interpretation and application of legal precepts, such as the statute of limitations and the doctrine of laches, *de novo.*[15]

## I. The Demerit of the Claims Actually Advanced by Levey.

 On appeal, Levey concedes that he commenced this action after the expiration

---

**13.** Ct. Ch. R. 56.

**14.** *See Worrel v. Farmers Bank of State of Del.,* 430 A.2d 469, 472–73 (Del.1981).

**15.** *Reid v. Spazio,* 970 A.2d 176, 180, 182 (Del.2009).

of the analogous three-year statute of limitations period. He argues, however, that his delay should be excused for two reasons. The first is that his "former counsel erred in not pursuing [his] claim in a more timely manner." The second is that a court of equity should toll the running of the statute for claims of wrongful self-dealing, where the plaintiff has reasonably relied on the competence and good faith of a fiduciary. Neither argument has merit.

We have consistently held that "our system necessarily imposes upon [parties] the consequences of their chosen attorneys' choice of conduct...."[16] Because "each party must be deemed bound by the acts of his lawyer-agent," Levey's first claim cannot excuse his delay and necessarily fails.[17]

 Levey's second argument also lacks merit. First, it was never presented to the Court of Chancery, and it is therefore waived.[18] Second, the argument lacks a factual foundation. Levey offered no evidence that he was ignorant of his claim, or that he relied on the Defendants' competence and good faith as fiduciaries. Indeed, the record shows the precise opposite. Levey knew that he had a breach of contract claim as early as January 25, 2007. And in fact, he never relied upon the Defendants trustworthiness at all: from the very outset of the dispute, he challenged the Defendants' good faith and integrity. Levey's claims—as actually presented—are, therefore, without merit.

That, however, does not dispose of this appeal, for the reasons next discussed.

## II. The Merit of the Claims Not Advanced By Levey But Disclosed by This Court's Independent Review.

Our independent review of the record discloses arguments that, had they been presented to the Court of Chancery, would have led to a different outcome. Because those arguments were not made, the Court of Chancery was led (through no fault of its own) to apply erroneously the statute of limitations by analogy to bar Levey's action.

 Laches is an affirmative defense that the plaintiff unreasonably delayed in bringing suit after learning of an infringement of his or her rights.[19] Laches consists of two elements: (i) unreasonable delay in bringing a claim by a plaintiff with knowledge thereof, and (ii) resulting prejudice to the defendant.[20] In determining whether an action is barred by laches, the Court of Chancery will normally, but not invariably, apply the period of limitations by analogy as a measure of the period of time in which it is reasonable to file suit.[21] A filing after the expiration of the analogous limitations period is presumptively an unreasonable delay for purposes of laches.[22] Conversely, in equity, a lawsuit commenced within the analogous period of limitations is presumed to have been filed

---

**16.** *Vance v. Irwin,* 619 A.2d 1163, 1166 (Del. 1993).

**17.** *Id.* at 1165.

**18.** Supr. Ct. R. 8; *Moody v. State,* 988 A.2d 451, 453 (Del.2010).

**19.** *U.S. Cellular Inv. Co. v. Bell Atlantic Mobile Sys., Inc.,* 677 A.2d 497, 502 (Del.1996) (citation omitted).

**20.** *Gallagher v. Long,* 65 A.3d 616, 2013 WL 1857552, at *2 (Del. Apr. 30, 2013) (TABLE) (citing *Homestore, Inc. v. Tafeen,* 888 A.2d 204, 210 (Del.2005)).

**21.** *See U.S. Cellular Inv. Co.,* 677 A.2d at 502 (citation omitted).

**22.** *Id.; Bean v. Fursa Capital Ptrs., LP,* 2013 WL 755792, at *4 (Del.Ch. Feb. 28, 2013) (citation omitted).

within a reasonable time.[23] Given this analytic framework, we address whether Levey's delay in filing his Chancery action was unreasonable as measured by the analogous period of limitations.

### A. The IAC Argument: The Analogous Statute of Limitations Does Not Apply.

The controlling authority on this issue is *IAC/InterActiveCorp. v. O'Brien*,[24] which neither side ever raised. In *IAC*, this Court held that a presence of "unusual conditions or extraordinary circumstances" can justify not applying the statute of limitations by analogy when determining whether a plaintiff's delay in filing suit is unreasonable.[25] Although the term "unusual conditions or extraordinary circumstances" was not precisely defined, the Court of Chancery considered the following factors, none of which, viewed alone, was dispositive:

1) whether the plaintiff had been pursuing his claim, through litigation or otherwise, before the statute of limitations expired;

2) whether the delay in filing suit was attributable to a material and unforeseeable change in the parties' personal or financial circumstances;

3) whether the delay in filing suit was attributable to a legal determination in another jurisdiction;

4) the extent to which the defendant was aware of, or participated in, any prior proceedings; and

5) whether, at the time this litigation was filed, there was a bona fide dispute as to the validity of the claim.[26]

In *IAC*, the plaintiff filed a timely action against a corporate defendant ("Corporation X") that had been previously acquired by another corporation ("Corporation Y"). The acquiror, Corporation Y, was "the party ultimately responsible for any award" in favor of the plaintiff, "controlled" the plaintiff's litigation against Corporation X "from the outset," "described itself as the real party in interest," and "already was litigating the . . . claim on behalf of" Corporation X.[27] After a non-Delaware court granted judgment for the plaintiff, Corporation X suddenly filed for bankruptcy.[28] Thereafter, the plaintiff sued Corporation Y in Delaware. In these extraordinary circumstances, we held that the analogous statute of limitations did not bar the plaintiff's later-filed suit against Corporation Y asserting the same claims the plaintiff had already raised and won in his action against Corporation X.[29]

 Applying the *IAC* analysis to the facts before us, we reach the same conclusion. That is, we conclude that this case involves unusual conditions and extraordinary circumstances that counsel against applying the analogous statutory period of limitations to bar Levey's claim.

---

**23.** There are circumstances, however, where a delay of a much shorter period—weeks or even days—may be unreasonable. One such circumstance would be where the plaintiff files a last-moment action for injunctive relief that could have been brought earlier, thereby making it difficult or impossible for the adverse party to prepare a defense. *See Whittington v. Dragon Grp. L.L.C.*, 2008 WL 4419075, at *7 (Del.Ch. June 6, 2008).

**24.** 26 A.3d 174 (Del.2011).

**25.** *Id.* at 178.

**26.** *Id.*

**27.** *Id.*

**28.** *Id.* at 178–79.

**29.** *Id.* at 179.

The first *IAC* inquiry is whether Levey asserted his claim (for a return of his capital investment and a one-third cash payment from the Brownstone Entities) "through litigation or otherwise," before the analogous three-year statute of limitations expired. He did. Levey first raised that claim against the Defendants in his February 23, 2006 counterclaim in the Southern District action. The Court of Chancery separately concluded that Levey had asserted his claim against the Defendants in his January 25, 2007 letter to the Defendants. Levey thus gave notice to the Defendants of his claim both "through litigation" (in his February 23, 2006 Southern District counterclaim) and "otherwise" (in his January 25, 2007 letter) before the three-year period of limitations expired in 2010. Levey therefore has successfully satisfied the first *IAC* factor.

The second *IAC* inquiry is whether Levey's delay in filing suit against the Defendants was "attributable to a material and unforeseeable change in the parties' personal or financial circumstances." Levey argues that his delay in filing suit resulted from the alleged professional misconduct of his previous attorney. This Court has previously held, however, that an attorney's conduct will be imputed to his client.[30] For this reason, the second *IAC* factor does not support a finding of "unusual conditions or extraordinary circumstances" in this case.

The third *IAC* inquiry is whether Levey's delay in filing his lawsuit was "attributable to a legal determination in another jurisdiction." It was. After the Defendants filed suit against Levey in the Southern District, Levey moved to compel arbitration. The Southern District later granted his motion. Relying on the South-

ern District decision compelling the parties to undergo mandatory arbitration, Levey filed an arbitration demand before FINRA, which, surprisingly, then disclaimed jurisdiction over his case.

These circumstances make it highly likely that Levey would not have taken this intermediate step of filing an arbitration demand before FINRA—with its attendant delay—were it not for the Southern District's "mandatory arbitration" ruling in a case that the *Defendants—and not Levey*—had brought. Stated differently, Levey's delay in filing suit in Delaware is attributable, at least in part, to the Defendants having sued Levey in the Southern District action, and also to that court's mandatory arbitration ruling—distinct from any inaction by Levey. This third *IAC* factor therefore clearly favors a finding of "unusual conditions and extraordinary circumstances."

The fourth *IAC* inquiry is whether the Defendants were "aware of, or participated in, any prior proceedings" against Levey. Again, the answer is yes. As stated earlier, the Defendants sued Levey in the Southern District, thereby prompting Levey to counterclaim against them in that same forum. Thereafter, as the Southern District instructed, Levey filed an arbitration demand before FINRA asserting the identical claim against the Defendants. These facts persuasively establish that the Defendants were aware of, and participated in, prior proceedings against Levey. The fourth *IAC* factor is satisfied.

The fifth and final *IAC* inquiry is whether there is a "bona fide dispute" as to the validity of Levey's claim in Delaware. The Court of Chancery so held, and we agree. The Vice Chancellor held that "in terms of

---

**30.** *See, e.g., Ogden v. Collins,* 2010 WL 4816059, at *5 (Del. Nov. 29, 2010); *Vance v. Irwin,* 619 A.2d 1163, 1165 (Del.1993); *Geb-* *hart v. Ernest DiSabatino & Sons, Inc.,* 264 A.2d 157, 160 (Del.1970).

surviving a motion to dismiss, I think [Levey's] claim certainly would." The court added, "It rankles to be in a position now where you see a claim that seems to be fairly litigable and where someone seems to have been largely deprived of his ability to litigate the merits of that claim or at least have a day in court." The trial court's determination establishes that there is a "bona fide dispute" over the validity of Levey's claim, and that the fifth *IAC* factor is satisfied.

In summary, four of the five *IAC* factors support a finding of "unusual conditions and extraordinary circumstances." Cumulatively, they strongly suggest that Levey's case presents the rare circumstance where the analogous period of limitations ought not to be the measure of whether a litigant unreasonably delayed in commencing his action.[31]

### B. The Equitable Tolling Argument: In Any Event, the Analogous Statute of Limitations was Tolled.

■■■ Our independent review discloses an alternative, separate reason why the Court of Chancery (again, through no fault of its own) reached an incorrect result. Even if the analogous period of limitations were the measure of whether Levey's delay in filing this action was unreasonable, the principle of equitable tolling compels the conclusion that Levey's delay was reasonable.

In *Reid v. Spazio*, this Court held that the Delaware Savings Statute [32] preserved an otherwise untimely plaintiff's suit, because the plaintiff had previously brought the claim in a different state court.[33] We explained that:

[A]llowing a plaintiff to bring his case to a full resolution in one forum before starting the clock on his time to file in this State will discourage placeholder suits, thereby furthering judicial economy. Prosecuting separate, concurrent lawsuits in two jurisdictions is wasteful and inefficient.... [And], the prejudice to defendants is slight because in most cases, a defendant will be on notice that the plaintiff intends to press his claims.[34]

That reasoning applies with equal force here.

*First,* Levey gave timely notice to the Defendants of his intent to assert his legal claim by filing a compulsory counterclaim in the Southern District action on February 23, 2006, and thereafter, by embodying that same claim in an arbitration demand with FINRA on February 15, 2008. Both filings occurred within the analogous three-year limitations period. In both filings, Levey raised substantially identical claims and later reiterated those same claims before the Court of Chancery. *Second,* Levey moved in the Southern District action, the forum in which the Defendants had first sued him, for a stay and to compel arbitration. *Third,* although the Southern District ordered mandatory arbitration, that ruling was apparently erroneous, because FINRA later dismissed Levey's arbitration demand on jurisdictional grounds. These undisputed facts establish that Levey timely and consistently asserted his claim in two, non-Delaware, fora within the analogous limitations period, and that his delay in filing suit in Delaware

**31.** See *IAC/InterActiveCorp v. O'Brien,* 26 A.3d 174, 178 (Del.2011).

**32.** 10 *Del. C.* § 8118(a).

**33.** *Reid v. Spazio,* 970 A.2d 176, 182–85 (Del. 2009).

**34.** *Id.* at 181–82; *see also Mergenthaler v. Asbestos Corp.,* 500 A.2d 1357, 1363 (Del.Super.1985) (allowing a court-imposed stay in another jurisdiction to toll the statute of limitations in Delaware).

was attributable partially—but not entirely—to extraneous factors other than his own inaction.

To state it more precisely, the running of the analogous statute of limitations (even if applicable) would have been equitably tolled during the pendency of the Southern District action and that court's consideration of Levey's motion to compel arbitration, and the later FINRA proceeding. The running of the statute would have been tolled for two reasons: (i) Levey's motion to compel arbitration was filed within the limitations period in the Southern District action brought by the Defendants, and (ii) the FINRA proceeding was a direct result of the Southern District's ruling in favor of Levey's motion, and as such, is fairly viewed as a continuation of the Southern District action. By virtue of that tolling, Levey's Delaware action—even though not filed until two years after FINRA dismissed his arbitration demand—would have been still been timely under the analogous three year limitations period.

The period during which the Southern District considered Levey's motion to compel arbitration (February 28, 2007 through September 17, 2007), *plus* the period during which FINRA considered Levey's arbitration demand (February 15, 2008 through June 24, 2008), operated to equitably toll the analogous, three-year statute of limitations for a period of 331 days. The Court of Chancery found that Levey's cause of action against the Defendants accrued on January 25, 2007, the date Levey first gave letter notice of his claim to the Defendants. Absent tolling, the three-

year limitations period would have expired on January 25, 2010. With equitable tolling, however, that three-year period was extended for an additional 331 days, or until December 21, 2010. On that basis, Levey's August 12, 2010 commencement of his Chancery litigation, although hardly prompt, was still timely. It follows that because Levey filed his Delaware action within the (equitably tolled) analogous limitations period, his delay in filing was not unreasonable for purposes of laches.[35]

### C. This Court Should Consider the IAC *And the Equitable Tolling Arguments In the Interest of Justice.*

■ Unfortunately, there is one serious obstacle to granting relief to Levey on either or both of the legal grounds discussed above. Levey did not present either the *IAC* "unusual conditions or extraordinary circumstances" argument, or the equitable tolling argument, before the Court of Chancery or to this Court. Under Rule 8, those arguments are therefore waived, unless this Court elects to consider them in the interest of justice.[36] We conclude that we should.

To begin with, the Court of Chancery itself believed that the outcome that it felt procedurally obligated to reach was unjust. The court noted, "there are plenty of indicia here that give the suggestion that Mr. Levey was treated unjustly .... [and] I would wish that he had the opportunity to litigate whether or not he was treated ill." Moreover, although the court believed itself compelled to hold the action was barred on laches grounds, in our view it did so only because of Levey's failure to

35. *See U.S. Cellular Inv. Co. v. Bell Atlantic Mobile Sys., Inc.,* 677 A.2d 497, 502 (Del. 1996). Because Levey did not unreasonably delay in filing suit against the Defendants in Delaware, we need not address the second prong of the laches analysis, namely, whether

the Defendants were prejudiced by Levey's delay.

36. Supr. Ct. R. 8; *Sugarland Indus., Inc. v. Thomas,* 420 A.2d 142, 151 & n. 9, 153 (Del. 1980).

raise the *IAC* and equitable tolling arguments that, had they been clearly presented, would have led that court to reach the opposite conclusion. Had the arguments previously discussed been advanced, we have no doubt that the Court of Chancery would have declined to bar the action on the ground of laches by analogy to the statute of limitations.

In these circumstances, for us not to consider both the *IAC* and equitable tolling arguments would disserve the interests of justice, whether viewed from the standpoint of law or equity. Because the Court of Chancery was led to reach an erroneous conclusion, we reverse and remand the case for that court to afford Levey an opportunity to litigate his claim on the merits.

## *CONCLUSION*

For the reasons stated above, the judgment of the Court of Chancery is reversed and remanded for further proceedings consistent with the rulings in this Opinion. Jurisdiction is not retained.