**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report:     December 8, 2020
Date Submitted:   November 23, 2020


Peter K. Schaeffer, Jr., Esquire
Avenue Law
1073 South Governors Avenue
Dover, Delaware19904

Barbara Snapp Danberg, Esquire
Baird Mandalas Brockstedt, LLC
Little Falls Centre One
2711 Centerville Road, Suite 401
Wilmington, Delaware 19808

RE:   *Stephanie G. Reed v. Russell Greene*
      C.A. No. 2020-0052-PWG

Dear Counsel:

Pending before me is a petition to partition an investment cash account filed by a sister against her brother, co-owners of the account. They owned the account with their mother, as joint tenants with right of survivorship, until their mother's death. The sister seeks an equal split of the proceeds, claiming that the brother's request to offset expenditures he made related to their mother's estate against her share of the proceeds is barred by laches. I recommend the Court order the

account partitioned and also grant the brother's request to offset the sister's share of the partition proceeds for his expenditures. This is a final report.

## I. Background

Gladys Greene ("Decedent") jointly owned a Bank of America Merrill Lynch cash account ("Account") with her daughter, Petitioner Stephanie Reed ("Reed"), and her son, Respondent Russell Greene ("Greene"), as joint tenants with right of survivorship, until her death on March 1, 2009.[1] During her lifetime, Decedent's income went into either the Account or a checking account ("Checking Account") that Decedent held jointly with Greene.[2] Decedent paid her bills from the Checking Account, funneling additional money from the Account into the Checking Account, as needed.[3]

Reed and Greene served as co-executors, and sole beneficiaries, of the Decedent's estate ("Estate"). The Estate Inventory filed with the Register of Wills ("ROW") lists the Account as jointly owned property with Reed and Greene, with a value of $57,401.53, and the Checking Account as jointly owned property with Greene, valued at $3,781.53, as of the date of Decedent's death.[4] Estate bills were

---

[1] Docket Item ("D.I.") 1, ¶ 6.

[2] Trial Tr. 23:7-12; Trial Tr. 25:16-26:10; Trial Tr. 46:10-23.

[3] Trial Tr. 26:21-23; Trial Tr. 47:1-2; Trial Tr. 52:2-4.

[4] *In the Matter of Gladys I. Greene*, 19403, D.I. 2. I take judicial notice of Kent County Register of Wills filings for the estate of Gladys I. Greene, which include an inventory, filed on November 9, 2009, and signed by Reed on October 26, 2009, and Greene on

handled similarly to Decedent's finances – bills were paid from the Checking

Account, with additional monies transferred from the Account to the Checking

Account, as needed.[5]  The evidence shows an invoice from Harold W. T. Purnell,

II, Estate attorney to the Estate, dated June 8, 2010, seeking a payment of

$20,265.70 in attorney's fees and costs ("Fees").[6]  Greene testified that he was

advised on June 29, 2010 by the Estate attorney's law firm that the Fees had to be

paid immediately so that the First and Final Account could be filed on a timely

basis.[7]  Greene testified that he contacted Reed that day, who told him to pay it.[8]

But, since there were not sufficient funds in the Checking Account, and Reed's

consent was required to take a distribution from the Account and she was

unavailable, he paid $20,265.70 for the Fees, and the $30.00 ROW filing fee, from

his personal checking account.[9]  Greene further testified that he drove to the

---

November 4, 2009. *See Arot v. Lardani*, 2018 WL 5430297, at *1, n. 6 (Del. Ch. Oct. 29, 2018) ("Because the Register of Wills is a Clerk of the Court of Chancery, filings with the Register of Wills are   subject   to judicial notice.")   (citations   omitted); *State   v. Falkowski*, 2001 WL 1448487, at *1, n. 1 (Del. Super. Oct. 2, 2001).

[5] Trial Tr. 17:10-16; Trial Tr. 21:21-22:1; Trial Tr. 32:24-33:21; Trial Tr. 48:17-20.

[6] D.I. 12, Ex. A.

[7] Trial Tr. 16:21-17:9; Trial Tr. 39:6-40:1.

[8] Trial Tr. 16:16-20; Trial Tr. 37:23-38:13.

[9] Trial Tr. 17:17-18:6; Trial Tr. 19:5-7; Trial Tr. 22:7-12.  *See* Resp's Trial Ex. 1 (copies of checks from Greene's personal account – one, dated June 29, 2010 and made out to the Estate attorney's law firm in the amount of $20,265.70, and another, dated June 30, 2010 and made out to the ROW for $30.00).  Also, the Estate's ROW file includes a June 29, 2010 email sent by Reed to ROW requesting a 30-day extension to file the Estate

3

attorney's office to deliver the checks.[10] The Estate's First and Final Account was filed with ROW on July 6, 2010, and detailed an Estate expense of $20,000.00 for attorneys' fees.[11] The Estate was closed on July 14, 2010.[12]

It appears Reed and Greene have a fractious relationship and have not spoken to each other for many years.[13] Greene asserts that they both owed the Fees and he believed he would be reimbursed from the Account for one-half of the Fees when the Account was ultimately divided.[14] Reed testified that she assumed the Fees were paid out of the Estate and, specifically, from funds in the Account.[15]

On January 28, 2020, Reed filed a petition ("Petition") seeking to partition the Account she co-owned with Greene.[16] Reed asserts that Respondent Bank of

---

accounting, in which she states that the Estate attorney "will not file my final inventory [sic] if we do not pay him his money and my brother [Greene] doesn't send in his paperwork," and "Merrill Lynch needs till next Tuesday to cash some securities in so we can pay him." *In the Matter of Gladys I. Greene*, 19403, D.I. 2. She further states "[t]he attorney talked to [Greene] today but I doubt that he will send in his paperwork . . . I am at the beach until Friday, so that is also part of the problem in trying to get things straightened out." *Id.* The ROW Chief Deputy responded to Reed, by email dated June 30, 2010, that she had spoken with the attorney's paralegal, who has all the paperwork, and an "extension is not necessary." *Id.*

[10] Trial Tr. 40:2-12.

[11] *In the Matter of Gladys I. Greene*, 19403, D.I. 2.

[12] *Id.*

[13] Trial Tr. 15:17-16:6; Trial Tr. 19:8-13: Trial Tr. 52:5-13.

[14] Trial Tr. 18:14-24.

[15] Trial Tr. 51:18-52:4. Testimony showed that it was Reed who selected the Estate attorney. Trial Tr. 20:16-21:6; Trial Tr. 50:16-51:17.

[16] D.I 1.

4

America Merrill Lynch ("Merrill Lynch"), the holder of the Account, refuses to distribute the Account without a written agreement by the co-owners.[17] Accordingly, Reed sought to have Merrill Lynch turn the corpus over to the Court and for the Court to distribute the monies in the Account on a 50/50 basis to Reed and Greene. She also asked that her attorney's fees be assessed against Greene's share of partition proceeds.

On June 22, 2020, Greene responded to the Petition, denying that the Account should be distributed on an equal basis and claiming that he should be reimbursed from the monies in the Account for one-half of the Estate attorney's fees that he personally paid.[18] Merrill Lynch was dismissed from the case on July 22, 2020, pursuant to a stipulated agreement.[19] A hearing on the Petition was held on November 23, 2020.

## II. Analysis

The parties agree the Account should be partitioned but disagree on the distribution of the proceeds.[20] Reed seeks an equal split of the proceeds, and argues that laches precludes Greene's claim for an offset against her share of the

---

[17] *Id.*, ¶ 7.

[18] D.I. 12, ¶ 12.

[19] Pursuant to the agreement, the Account remains frozen pending further order of the Court and Merrill Lynch agreed to comply with all Court orders regarding disposition of the Account. D.I. 16.

[20] *See* Trial Tr. 10:10-12.

proceeds, since the Fees were Estate debts incurred prior to the Estate's closure in 2010.[21] She relies on the analogous statute of limitations for a debt, 10 *Del. C.* §8106, which limits debt claims to three years, and alleges it would be difficult to validate the agreement about the expense after ten years.[22] And, she asserts the Account has remained untouched since, at least, 2014.[23]

Greene responds that there are no specified time limitations for offsets or contributions by the parties in partition actions.[24] He claims expenditures on the Fees benefitted both Reed and Greene, both parties waited to divide the Account, and he understood he would be compensated for Reed's share of the Fees when the Account was eventually divided.[25]

First, I consider the Court's jurisdiction over this action to partition personal property. "Equity courts have historically upheld the right of a tenant in common to seek a partition of personal property."[26] "An accounting is often an incident to a suit for partition between joint tenants and tenants in common," where "mutual

---

[21] Trial Tr. 8:2-9:7.

[22] Trial Tr. 57:21-59:21.

[23] Trial Tr. 59:23-60:7.

[24] Trial Tr. 63:8-17.

[25] Trial Tr. 18:14-24; Trial Tr. 29:16-24; Trial Tr. 64:10-16.

[26] *Burkett v. Ward*, 2012 WL 6764072, at *1 (Del. Ch. Dec. 19, 2012) (*citing JLF, Inc. v. NJE Aircraft Corp.*, 1988 WL 58274, at *2 (Del. Ch. June 2, 1988); *see also Carradin v. Carradin*, 1980 WL 10015, at *3 (Del. Ch. Jan. 31, 1980) ("[a] court of equity is the

debts are alleged to exist."[27] Here, Reed and Greene own the Account as tenants in common and I find the Court has equitable jurisdiction over a partition of the Account, and any accounting addressing related debts.

The next issue is whether laches bars Greene's claim seeking an offset of the partition proceeds for one-half of the monies he expended on the Fees. The "doctrine of laches protects defendants from prejudice by prohibiting the unreasonably slow filing of equitable claims."[28] Laches generally consists of three elements: "first, knowledge by the claimant; second, unreasonable delay in bringing the claim, and third, resulting prejudice to the defendant."[29] Statutes of limitations "are not controlling in equity"[30] and, "unlike a statute of limitations, the equitable doctrine of laches does not prescribe a specific time period as unreasonable."[31] Although "filing after the expiration of the analogous limitations period is presumptively an unreasonable delay for purposes of laches,"[32] a determination on "unreasonable delay and prejudice . . . depend[s] upon the totality

---

proper tribunal for the partition of personal property whether the title is legal or equitable").

[27] *Carradin*, 1980 WL 10015, at *3.

[28] *Quill v. Malizia*, 2005 WL 578975, at *14 (Del. Ch. Mar. 4, 2005).

[29] *Reid v. Spazio*, 970 A.2d 176, 182-83 (Del. 2009) (citation omitted); *see also Levey v. Brownstone Asset Mgmt., LP*, 76 A.3d 764, 769 (Del. 2013); *Fike v. Ruger*, 752 A.2d 112, 114 (Del. 2000).

[30] *Reid*, 970 A.2d at 183.

[31] *Whittington v. Dragon Grp., LLC*, 991 A.2d 1, 9 (Del. 2009).

of the circumstances."[33]  And, unusual conditions or extraordinary circumstances can justify not applying the analogous limitations period.[34]  The Court focuses on "whether it is inequitable to permit a claim to be enforced, the touchstone of which is inexcusable delay leading to an adverse change in the condition or relations of the property or the parties."[35]

Here, the evidence shows both parties knew that the Fees were a debt of the Estate and acknowledged that debt when they signed off on the First and Final Account and through other evidence.  And, although the Account, as joint property, was not an Estate asset for probate purposes, the parties' arrangement was that funds from the Account were used to pay Estate debts generally, and would be used to pay for the Fees specifically.  Greene and Reed both had knowledge of the claim at the time it accrued.  The key questions are whether Greene's delay in bringing his claim for reimbursement of one-half of the Fees was unreasonable and also prejudicial to Reed.

It is undisputed that the claim regarding the Fees accrued approximately ten years ago – when Greene paid the Fees, an Estate expense, personally – and that Greene has not taken legal action against Reed regarding his claim since that time.

---

[32] *Levey*, 76 A.3d at 769.

[33] *Hudak v. Procek*, 806 A.2d 140, 153 (Del. 2002); *see also Whittington*, 991 A.2d at 9.

[34] *Levey*, 76 A.3d at 770.

[35] *Reid v. Spazio,* 970 A.2d 176, 183 (Del. 2009).

That length of time is presumptively unreasonable, however, the extraordinary circumstances of this case justify a finding that Greene's delay was not unreasonable such that it caused prejudice to Reed. Reed knew about the Fees at the time Greene paid them, and intended that Account funds would be used to pay the Fees. It was Greene's quick action in paying the Fees from his personal account – rather than waiting to make arrangements to access funds in the Account to pay the Fees – that prevented the Estate from being late in filing its accounting. Greene's actions benefitted both Reed and him, as co-executors and beneficiaries of the Estate. Reed's email to ROW confirms she was concerned about the consequences if the accounting was filed late.[36] There is no evidence of prejudice to Reed by the delay, and the transactions at issue in this case have not "become so obscured by time as to render the ascertainment of the exact facts impossible."[37] The situation in this case is readily ascertainable based on the available evidence – there are an invoice and checks from Greene showing the expenditures, and the intended payment arrangement for the Fees is evident from testimony (including Reed's testimony that she believed the Estate would pay the Fees, and Reed's email to ROW).

---

[36] *See* n. 9 *supra*.

[37] *Hudak*, 806 A.2d at 158.

Here, Greene's lengthy delay did not cause an adverse change in the condition or relations of the property or the parties. Torpor occurred, but it was mutual torpor – both parties knew of the debt and let the Account sit untouched for years without dividing it.[38] I find Greene's claim against Reed is not barred by laches, since she knew that the Fees were a debt of the Estate and Estate expenses were paid from the Account, and she benefitted equally from its payment by Greene. Therefore, the cost of one-half of the Fees ($10,132.85) and one-half of the ROW filing fee ($15.00), or $10,147.85, will be assessed against Reed's one-half share of the monies contained in the Account.

Finally, Reed asks that the attorney's fees and costs she incurred in pursuing this action be awarded to her from Greene's share of the partition proceeds.[39] She argues that Greene's resistance in allowing distribution of the Account, despite her reaching out to him through attorneys, justifies an award of her attorney's fees. "Under the American Rule and Delaware law, litigants are normally responsible for paying their own litigation costs," including attorneys' fees.[40] Equitable

---

[38] Reed testified that she reached out to Greene through an attorney about the Account between two and five years ago, and received no response. Trial Tr. 52:15-19. However, she failed to take further action until filing this Petition.

[39] D.I. 1.

[40] *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007); *see also ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554, 558, n. 17 (Del. 2014); *Korn v. New Castle Cty.*, 2007 WL 2981939, at *2 (Del. Ch. Oct. 3, 2007).

exceptions to the American Rule include the bad faith exception,[41] as well as the "common fund doctrine" and the related "common benefit doctrine," which are based "on the equitable principle that those who have profited from a litigation should share its costs."[42] Here, I find no basis to shift Reed's attorney's fees and costs onto Greene's share of the partition proceeds. There is no evidence of bad faith conduct by Greene during the litigation and his resistance reflects the dispute regarding the division of the Account, not bad faith. Nor have Reed's efforts, in partitioning the Account, produced a benefit that would not otherwise have existed.[43]

## III. Conclusion

Based upon the reasons set forth above, I recommend the Court partition the Bank of America Merrill Lynch account, owned by Reed and Greene as joint

---

[41] Attorney's fees are awarded for bad faith when "parties have unnecessarily prolonged or delayed litigation, falsified records or knowingly asserted frivolous claims." *Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 506 (Del. 2005) (citation omitted); *see also RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 877 (Del. 2015) (citation omitted). And, "[t]he bad faith exception is applied in 'extraordinary circumstances' as a tool to deter abusive litigation and to protect the integrity of the judicial process." *Montgomery Cellular Holding Co. v. Dobler*, 880 A.2d 206, 227 (Del. 2005) (citation omitted).

[42] *Korn*, 2007 WL 2981939, at *2 (citation omitted).

[43] The common benefit doctrine "is designed to equitably spread the costs of producing a benefit realized by a group, which benefit, absent the [Petitioner's] efforts, *would not exist*." *Moore v. Davis*, 2011 WL 3890534, at *2 (Del. Ch. Aug. 29, 2011). In this case, the partition served to divide the parties' fractional ownership of an investment account, so the exchange was "a wash." *See Estate of Proffitt v. Miles*, 2012 WL 3542202, at *2 (Del. Ch. Aug. 4, 2012); *Moore*, 2011 WL 3890534, at *2.

tenants with right of survivorship, and offset Reed's share of the partition proceeds by one-half of Greene's payment for Estate attorney's fees and costs, and one-half of the ROW filing fee. Therefore, Reed is entitled to receive one-half of the amount of proceeds currently in that account[44] minus $10,147.85, and Greene is entitled to receive one-half of the amount of the proceeds currently in that account plus $10,147.85. I also recommend the Court deny Reed's claim for her attorney's fees and costs in this litigation. The parties shall confer and submit an implementing order within 20 days of this report becoming final. This is a final report and exceptions may be filed pursuant to Court of Chancery Rule 144.

Respectfully yours,

/s/ Patricia W. Griffin

Master Patricia W. Griffin

---

[44] The most recent account statement in evidence shows the account's value was $49,060.97 as of October 31, 2019. The parties will ascertain the current value of the account and reflect that value in the implementing order they submit.