**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report:     April 16, 2021
Date Submitted:  March 24, 2021

***Via File & ServeXpress***
R. Eric Hacker, Esquire
Morris James LLP
107 West Market Street
P.O. Box 690
Georgetown, Delaware 19947-0690

***Via U.S. Mail***
Robert Boyd Fitzgerald
25716 Deep Branch Road
Milton, Delaware 19968

RE:   *Robert Boyd Fitzgerald v. Fitzgerald Home Farm, LLC*
      C.A. No. 2019-0410-PWG

Dear Counsel and Mr. Fitzgerald:

Pending before me is an action filed by a brother seeking damages and reinstatement as a member of the family limited liability company ("LLC"). The LLC responds that the brother voluntarily withdrew as a member of the LLC more than a decade ago, so the action is barred by laches and unclean hands and he is precluded, under the LLC agreement, from receiving fair market value for his interest. I find that the brother's claims are untimely and barred by laches, and

recommend that the Court dismiss the complaint with prejudice. This is a final report.

## I.    Background[1]

The Fitzgerald Home Farm, LLC ("LLC") was formed on May 7, 2008, as a part of the estate planning process for Robert B. Fitzgerald ("Robert").[2] Under the Fitzgerald Home Farm, LLC Limited Liability Company Agreement ("LLC Agreement") executed on May 7, 2008, Robert was the manager and held 100% of the interest in the LLC.[3] On May 20, 2008, membership interests changed, with Robert retaining a 64% interest in the LLC, and assigning a 9% interest to each of his four children, Kirby Fitzgerald ("Kirby"), Meghan Fitzgerald ("Meghan"), Jeffrey Semans ("Jeffrey") and Robert Boyd Fitzgerald ("Boyd").[4] On November 22, 2009, Robert resigned as manager of the LLC and appointed Kirby as manager, with the consent of all members.[5]

In 2009, LLC members, including Boyd, received cash distributions from the LLC.[6] At that time, Boyd was receiving the income-based Supplemental

---

[1] I refer to the trial transcript as "Trial Tr.," and Defendant's trial exhibits as "DX."

[2] DX 1; Trial Tr. 58:22-59:4. I use first names in pursuit of clarity and intend no familiarity or disrespect.

[3] DX 2, §5.1.1, Ex. A.

[4] DX 3.

[5] DX 4.

[6] Trial Tr. 62:22-24; DX. 5.

Security Income ("SSI") and the LLC distribution affected his SSI payments, resulting in the need for him to repay some of the SSI he received.[7]  On November 24, 2010, Boyd sent a letter ("2010 Letter") to Kirby stating that "I've done a lot of thinking and decided I don't want to be a part of this LLC.  I'd like my name taken off the role."[8]  Kirby discussed Boyd's letter with other LLC members and they agreed to allow Boyd to voluntarily withdraw as a member.[9]  Boyd's interest was then divided among the remaining siblings.[10]  From 2010 through 2019, LLC members (not Boyd) received cash distributions from the LLC.[11]  On or about July of 2012, during a meeting with Boyd ("2012 SSA meeting"), a Social Security Administration ("SSA") representative called Kirby, at Boyd's behest, to confirm that Boyd was no longer receiving income from the LLC.[12]

On June 22, 2012, Robert gifted his 64% interest to Kirby, Meghan and Jeffrey equally.[13]  At his death on December 15, 2018, Robert held no interest in

---

[7] Trial Tr. 26:1-27:5.

[8] DX 6.

[9] Trial Tr. 64:18-65:2.

[10] Trial Tr. 65:3-7.  Kirby, Meghan and Jeffrey each ended up with a 12% interest in the LLC. DX 7.

[11] Trial Tr. 45:22-46:5; Trial Tr. 69:10-15.

[12] Trial Tr. 29:9-30:9; Trial Tr. 67:13-68:6; DX 10.

[13] Trial Tr. 70:19-71:4.  Kirby and Jeffrey together owned a 66% interest in the LLC through FS Land, LLC, and Meghan held a 34% interest. DX 11.

the LLC.[14] Except for the telephonic interaction with the SSA, Boyd and Kirby have had no communications from the time Kirby received the 2010 Letter until Boyd filed a complaint in the Court of Common Pleas ("CCP"), on or about February 8, 2019, seeking his reinstatement as a LLC member and his share of LLC income.[15] CCP dismissed the case.[16]

On June 3, 2019, Boyd filed a complaint ("Complaint") against the LLC in the Court of Chancery alleging that he has not been legally removed from the LLC and seeking reinstatement as a LLC member and damages representing his share of LLC income between 2010 and 2018, as well as 25% of the income since Robert's death.[17] On July 3, 2019, the LLC filed an answer asking to dismiss the Complaint with prejudice because of Boyd's voluntary withdrawal as a LLC member in 2010, and asserting defenses, including laches, estoppel and unclean hands.[18] Following discovery, a hearing was held by Zoom on March 24, 2021.

## II. Analysis

First, I consider whether Boyd's claims are barred by laches. The LLC argues that the claims involve rights under the LLC Agreement, which is a legal

---

[14] Trial Tr. 72:17-18; Trial Tr. 73:6-9.

[15] Trial Tr. 38:7-10; Trial Tr. 47:12-19; Trial Tr. 69:5-9, 16-19; Trial Tr. 89:7-15; DX 13.

[16] *See* D.I. 16, at 2.

[17] D.I. 1, at 4.

[18] D.I. 5, at 7.

issue governed by the statute of limitations and may be tolled only until Boyd had inquiry notice.[19] It contends that Boyd had inquiry notice no later than 2012 or 2013 because Boyd knew that, after sending the 2010 Letter, that he did not receive LLC distributions beginning in 2010; in 2012, Boyd asked the SSA, in his presence, to contact Kirby to confirm Boyd's lack of LLC income; and finally in 2013, after Boyd became aware that he could receive LLC distributions without affecting his SSI, he failed to take action regarding the LLC until December of 2018.[20] Further, the LLC argues prejudice has been shown, since the LLC's membership structure has changed since the 2020 Letter and the LLC reported information to taxing authorities in reliance on Boyd's withdrawal.[21] Boyd responds that laches does not apply because he had no notice of his change in membership status and he had not signed any "[legal] papers signing off."[22]

Laches is an equitable doctrine "rooted in the maxim that equity aids the vigilant, not those who slumber on their rights."[23] A finding of laches generally requires proof of three factors: the claimant's knowledge of the claim,

---

[19] Trial Tr. 110:1-3; Trial Tr. 110:20-21.

[20] Trial Tr. 110:7-111:17.

[21] Trial Tr. 111:21-112:4.

[22] Trial Tr. 21:15-17; Trial Tr. 33:14-15.

[23] *Adams v. Jankouskas*, 452 A.2d 148, 157 (Del. 1982); *see also Reid v. Spazio*, 970 A.2d 176, 182 (Del. 2009) (citations omitted); *Kraft v. WisdomTree Inv., Inc.*, 145 A.3d 969, 974 (Del. Ch. 2016) (citations omitted).

unreasonable delay in bringing the claim, and resulting prejudice to the defendant.[24] "In determining whether an action is barred by laches, the Court of Chancery will normally, but not invariably, apply the period of limitations by analogy as a measure of the period of time in which it is reasonable to file suit."[25]

Historically, the Court's approach to laches has varied, depending on whether the claims and requested relief constitute legal and/or equitable matters.[26] Here, Boyd alleges legal claims related to his rights under the LLC Agreement.[27] He seeks equitable relief (reinstatement as a LLC member) and legal relief (damages for distributions not paid to him). With regard to laches, "[w]hen an equitable claim seeks legal relief or a legal claim seeks equitable relief, the Court . . . appl[ies] the statute of limitations by analogy," which operates "as a strong presumption of laches for cases [like this one] . . ., which generally will obviate the need for a traditional laches inquiry. The presumption is rebuttable, however,

---

[24] *See Whittington v. Dragon Grp., LLC*, 991 A.2d 1, 8 (Del. 2009).

[25] *Levey v. Brownstone Asset Mgmt., LP*, 76 A.3d 764, 769 (Del. 2013).

[26] *Kraft*, 145 A.3d at 975.

[27] *Domain Assocs., LLC v. Shah*, 2018 WL 3853531, at *9 (Del. Ch. Aug. 13, 2018) ("[t]he LLC Agreement is a contract"); *see also Moscowitz v. Theory Enm't LLC*, 2020 WL 6304899, at *11 (Del. Ch. Oct. 28, 2020) ("Under Delaware law, the proper interpretation of language in a contract is a question of law.") (citation omitted).

either by a recognized tolling doctrine or by the presence of extraordinary circumstances."[28]

Here, the analogous limitations period for Boyd's claims is three years.[29] The cause of action accrues "under Section 8106 at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action."[30] "For a breach of contract claim, the wrongful act is the breach and the cause of action accrues at the time of the breach."[31] Here, the alleged breach occurred on November 24, 2010 – when Boyd withdrew or was removed as a member of the LLC, even if Boyd was unaware of the breach. Therefore, the analogous three-year limitations period expired on November 24, 2013. So, absent tolling or unusual circumstances, Boyd's claim is barred by laches.

I consider if there is a basis for tolling the statute of limitations period, and focus on equitable tolling.[32] "Under the theory of equitable tolling, the statute of

---

[28] *Kraft*, 145 A.3d at 983.

[29] *See* 10 *Del. C.* §8106; *Forman v. CentrifyHealth, Inc.*, 2019 WL 1810947, at *8 (Del. Ch. Apr. 25, 2019); *Akrout v. Jarkoy*, 2018 WL 3361401, at *9 (Del. Ch. July 10, 2018) ("Under 10 *Del. C.* § 8106, a three-year period of limitations applies to claims sounding in . . . contract").

[30] *Forman*, 2019 WL 1810947, at *8 (citation omitted).

[31] *Id.* (citation omitted).

[32] There is no evidence to support tolling on the other two grounds – inherently unknowable injury or fraudulent concealment. "Under the doctrine of inherently unknowable injuries, the statute will not run where it would be practically impossible for a plaintiff to discover the existence of a cause of action." *In re Tyson Foods, Inc.* ["*Tyson*"], 919 A.2d 563, 584 (Del. Ch. 2007); *see also Barbosa v. Bob's Canine Acad.,*

limitations is tolled for claims of wrongful self-dealing, even in the absence of actual fraudulent concealment, where a plaintiff reasonably relies on the competence and good faith of a fiduciary."[33]  However, the limitations period is "tolled *only until* the plaintiff discovers (or exercising reasonable diligence should have discovered) his injury."[34]  At that point, the claimant is on inquiry notice of the injury.  Inquiry notice occurs when "persons of ordinary intelligence and prudence . . . have facts sufficient to put them on inquiry which, *if pursued,* would lead to the discovery of the injury."[35]  Inquiry notice does not require the claimant's "*actual* discovery of the reason for the injury," or the claimant's "awareness of all of the aspects of the alleged wrongful conduct," but that he is "*objectively* aware of the facts giving rise to the wrong, *i.e.*, on inquiry notice."[36]

---

*Inc.*, 2017 WL 2492042, at *6 (Del. Ch. May 19, 2017).  Boyd has not shown that he was "'blamelessly ignorant' of both the wrongful act and the resulting harm." *Tyson*, 919 A.2d at 585.  Nor is there evidence of the tolling exception of fraudulent concealment, which occurs "where an affirmative act of concealment or a misrepresentation was used to put the plaintiff off the trail of inquiry." *Silverberg v. Padda*, 2019 WL 4566909, at *10 (Del. Ch. Sept. 19, 2019), *reargument denied,* 2019 WL 5295141 (Del. Ch. Oct. 18, 2019) (internal quotation marks and citations omitted); *see also Tyson*, 919 A.2d at 585.

[33] *In re Dean Witter P'ship Litig.* ["*Dean Witter*"]*,* 1998 WL 442456, at *6 (Del. Ch. July 17, 1998), *aff'd,* 725 A.2d 441 (Del. 1999); *see also In re Primedia, Inc. S'holders Litig.* ["*Primedia*"], 2013 WL 6797114, at *12 (Del. Ch. Dec. 20, 2013) (citation omitted).

[34] *Dean Witter*, 1998 WL 442456, at *6; *see also Primedia*, 2013 WL 6797114, at *12 (citations omitted); *see also Silverberg*, 2019 WL 4566909, at *10 (citations omitted).

[35] *Dean Witter,* 1998 WL 442456, at *7 (emphasis included).

[36] *Id.,* at *6-7 (emphasis included); *see also Fike v. Ruger*, 752 A.2d 112, 114 (Del. 2000) ("In applying laches, a plaintiff is chargeable with such knowledge of a claim as he or she

"Suspicious facts, or red flags, require a plaintiff to diligently investigate and to file within the limitations period as measured from that time."[37]   The claimant "bear[s] the burden of showing that the limitations period was equitably tolled."[38]

Here, Boyd reasonably relied on Kirby in his fiduciary capacity as manager of the LLC.[39]  And, Kirby benefitted personally from Boyd's departure as a LLC member because his interest in the LLC increased as a result.  Equitable tolling, however, ends and the limitations period begins to run, at the time Boyd had inquiry notice of the injury or breach.  Boyd knew he had sent the 2010 Letter to Kirby, on November 24, 2010, in which he stated he no longer wanted to be a part of the LLC and wanted to be "taken off the role."[40]  Boyd testified that he intended the 2010 Letter as an "overture" for further dialogue with his younger brother, and not to request removal from the LLC without compensation for his interests.[41]

---

might have obtained upon inquiry, provided the facts already known to that plaintiff were such as to put the duty of inquiry upon a person of ordinary intelligence.").

[37] *In re Swisher Hygiene, Inc.,* 2020 WL 3125415, at *3 (Del. Ch. June 12, 2020), *reargument denied,* 2020 WL 5268067 (Del. Ch. Sept. 4, 2020) (internal quotation marks and citations omitted).

[38] *Primedia*, 2013 WL 6797114, at *12; *see also Dean Witter*, 1998 WL 442456, at *6.

[39] *Skye Min. Inv'rs, LLC v. DXS Cap. (U.S.) Ltd.*, 2020 WL 881544, at *21 (Del. Ch. Feb. 24, 2020) ("Without language in an LLC agreement to the contrary, the managers of a Delaware LLC owe traditional fiduciary duties of care and loyalty."); *see also CMS Inv. Holdings, LLC v. Castle*, 2015 WL 3894021, at *18 (Del. Ch. June 23, 2015) ("Delaware law is clear that, '[u]nder traditional principles of equity, a manager of an LLC would qualify as a fiduciary of that LLC and its members.'") (citation omitted).

[40] *See* DX 6.

[41] Trial Tr. 9:19-21; Trial Tr. 36:8-24.

Although that may have been Boyd's subjective intent, the plain language of the 2010 Letter reflects a different interpretation when read objectively. The 2010 Letter unequivocally states that Boyd wanted out of the LLC, closing with the statement that Boyd didn't "expect to talk to [Kirby] anymore."[42] The language in the 2010 Letter does not support Boyd's assertion that he intended for the letter to foster further dialogue on the matter. And, Boyd had a practical reason for leaving the LLC – the distributions he received as a member were affecting his SSI payments.[43] Further, Boyd admitted that he knew LLC members received distributions between 2010 and 2019, and that he did not.[44] And, he did not subsequently communicate with Kirby about his status or the LLC, until he filed a CCP action, in 2019, seeking reinstatement as a LLC member.[45]

---

[42] DX 6.

[43] Boyd testified that the distributions were "complicating everything in [his] life" and he made a choice to receive SSI instead of the distributions. Trial Tr. 39:14-24.

[44] Trial Tr. 34:2-5; Trial Tr. 45:22-46:5; Trial Tr. 69:10-12. Kirby testified that all members received a Schedule K-1 reflecting their share of the LLC's income, etc., each year for their tax returns. Trial Tr. 90: 15-16. And that Boyd received a Schedule K-1 for 2009, and Kirby believed that Boyd received the K-1 for 2010, which showed that Boyd had 0% interest in the LLC at the end of 2010. Trial Tr. 90: 10-15; Trial Tr. 90: 21-23; DX 5: DX 8. Kirby stated that Boyd did not receive a Schedule K-1 for the LLC after that. Trial Tr. 91:22-24.

[45] Trial Tr. 89:10-15. Boyd stated that he and Kirby have not "shared one single word since 2008," and that he has not called or spoken to Kirby but was waiting "for [Kirby] to contact [him]." Trial Tr. 47:12-19. He further testified that he did not receive a copy of the LLC Agreement and did not understand he was no longer a member, pursuant to the LLC Agreement. Trial Tr. 44:10-24. (The LLC Agreement provides that no member has the right to voluntarily withdraw from the LLC and, if they do, they are not paid for the fair value of their interest. *See* DX 2, §6.2.) Kirby indicated he does not remember giving

Boyd's only contact with Kirby about the LLC between 2010 and 2018 was the 2012 SSA meeting, when Boyd provided a SSA representative with Kirby's phone number and had her call Kirby, in his presence, to confirm that Boyd was no longer receiving distributions (because he was no longer a LLC member).[46]  Even when Boyd learned, in 2013, that receiving LLC distributions would no longer affect his Social Security benefits because of his age, he did not contact Kirby to ask about LLC benefits.[47]

The circumstances of this case show there were "red flags" to put Boyd on inquiry notice no later than 2012 (after his 2010 Letter, and the termination of his LLC distributions, which was confirmed, at his behest, at the 2012 SSA meeting). Boyd had sufficient knowledge at that point that would have raised the suspicions

---

Boyd a copy of the LLC Agreement. Trial Tr. 92:23-93:1.   Under the LLC Agreement, the manager is required to provide certain LLC financial information, including a Schedule K-1, to all members annually, and to maintain the LLC's books and records and make them "available . . . for examination by any Member . . . for any purpose reasonably related to such Member's interest as a Member," with the Member paying for copying costs. DX 2, §8.2.2, 8.2.3, §8.4; *see also* 6 *Del. C.* §18-305.  If a member makes a demand, they must be allowed to examine, and make a copy of, the LLC Agreement. There is no evidence that Boyd asked for the LLC Agreement and was refused.

[46] Trial Tr. 29:9-23; Trial Tr. 67:13-68:6.  Boyd testified that the SSA representative told him nothing about the discussion with Kirby but said, after concluding the conversation with Kirby, "that takes care of that." Trial Tr. 30:6-10.  Even if Boyd did not participate in the phone call between Kirby and the SSA representative, he was advised that the matter (concerning problems caused by his receipt of LLC distributions as a member) was resolved.   Kirby sent copies of the LLC's 2009 and 2010 Schedule K-1 forms showing Boyd's interest, as well as the 2010 Letter, to the SSA to "prove that [Boyd] has not received income from the LLC within the past two years so he can receive social security  benefits." DX 10; Trial Tr. 68:7-24.

of a person of ordinary intelligence and prudence so that they would have commenced an investigation and discovered the breach (his removal as a LLC member). He may not have probed further because it inured to his benefit – he did not want to receive LLC distributions, which complicated his SSI. I recognize that his inaction, and decision to wait until Kirby contacted him, may have been influenced by complicated family relationships, but laches requires a claimant to act with reasonable diligence to investigate suspicious facts. Despite the existence of multiple "red flags," Boyd failed to investigate, which would have led to discovery of the breach. Therefore, tolling ended, and the limitations period began to run by 2012, and Boyd failed to file this, or the CCP action, within the three-year limitations period.[48] Accordingly, I find Boyd's claims are untimely and barred by laches.[49]

---

[47] Trial Tr. 31:1-32:1.

[48] I also consider whether "unusual conditions or extraordinary circumstances" apply which would justify deviating from the analogous statute of limitations in this case. Factors to be considered in that analysis include: "1) whether the plaintiff had been pursuing his claim, through litigation or otherwise, before the statute of limitations expired; 2) whether the delay in filing suit was attributable to a material and unforeseeable change in the parties' personal or financial circumstances; 3) whether the delay in filing suit was attributable to a legal determination in another jurisdiction; 4) the extent to which the defendant was aware of, or participated in, any prior proceedings; and 5) whether, at the time this litigation was filed, there was a bona fide dispute as to the validity of the claim." *IAC/InterActiveCorp v. O'Brien*, 26 A.3d 174, 178 (Del. 2011). The evidence does not indicate that any of the factors are applicable in this case to avoid a finding of laches. Further, prejudice is presumed (and there were LLC structural changes after Boyd was no longer a member and tax reporting related to Boyd's status). *See Kraft v. WisdomTree Inv., Inc.*, 145 A.3d 969, 979 (Del. Ch. 2016) ("[the Court may]

## III.    Conclusion

For the reasons set forth above, I find Plaintiff Robert Boyd Fitzgerald's claims pursuant to the LLC Agreement are barred by laches, and recommend that the Court dismiss this action with prejudice.  This is a final report and exceptions may be taken pursuant to Court of Chancery Rule 144.

Respectfully,

/s/ Patricia W. Griffin

Patricia W. Griffin
Master in Chancery

---

presume prejudice if the claim is brought after the analogous limitations period has expired"); Trial Tr. 111:21-112:17.

[49] Since I find Boyd's claims are barred by laches, I do not address the LLC's assertions that the doctrines of unclean hands or equitable estoppel also preclude Boyd from obtaining relief.  In addition, there was testimony at the hearing regarding Boyd's rights to possession related to the cottage on the LLC's property where he resides. Trial Tr. 51:19-52:17; Trial Tr. 55:3-8.  However, any claim for possession was not brought, or addressed, as a part of this action.