**IAC/INTERACTIVECORP, Defendant Below, Appellant,**

v.

**Wesley T. O'BRIEN, Plaintiff Below, Appellee.**

No. 629, 2010.

Supreme Court of Delaware.

Submitted: May 25, 2011.
Decided: Aug. 11, 2011.

Peter J. Walsh, Jr., Esquire, (argued) and Meghan M. Dougherty, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware for Appellant.

Kurt M. Heyman, Esquire and Patricia L. Enerio, Esquire of Proctor Heyman LLP, Wilmington, Delaware. Of Counsel: Mark S. Gregory, Esquire (argued) of Martin Chioffi, LLP, Stamford, Connecticut. Robert J. Hunt, Esquire of Hunt & Gross, P.A., Baca Raton, Florida for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

In this appeal we consider, among other matters, whether the Court of Chancery correctly applied the doctrine of laches in finding that a corporate indemnification claim was timely filed. Before filing this action, appellee, a corporate officer, had successfully litigated an indemnification claim against his former employer in Florida. But the former employer went bankrupt before the litigation concluded. Appellee then filed this action, seeking the same indemnification, against the former employer's parent company. The Court of Chancery acknowledged that the claim likely would be barred by the statute of limitations. The trial court entered judgment in appellee's favor, nonetheless, be-

cause it held that the claim was not controlled by the statute of limitations or barred by laches. We agree that the unusual circumstances presented here warrant the trial court's deviation from the applicable statute of limitations in applying the doctrine of laches.

## FACTUAL AND PROCEDURAL BACKGROUND

Wesley T. O'Brien became chief operating officer and chief executive officer of Precision Response Corporation (PRC) in 1998. At that time, PRC agreed to indemnify O'Brien in his executive roles, "to the fullest extent permitted by law," in an indemnification agreement purporting to be governed by Florida law. In 2000, IAC/InterActiveCorp (IAC) acquired PRC and, under the merger agreement, IAC assumed PRC's obligations to indemnify O'Brien. In 2001, PRC acquired Avaltus, Inc. The Avaltus merger agreement required that disputes be resolved through arbitration. In October 2002, Avaltus's principal stockholder commenced arbitration against PRC to recover funds placed in escrow in connection with the merger. Shortly thereafter, PRC fired O'Brien and filed counterclaims against him in the pending arbitration. PRC alleged that O'Brien breached his fiduciary duties to PRC and fraudulently induced PRC to acquire Avaltus.

In December 2002, O'Brien retained Robert Hunt, Esquire to defend against PRC's claims and to pursue a claim against PRC for breach of O'Brien's employment contract. In January 2003, O'Brien requested that PRC advance his legal fees and expenses. PRC refused. The next month, O'Brien answered the arbitration counterclaim and filed his own claim seeking a declaratory judgment that he had committed no wrongdoing.

In January 2005, the arbitration panel found that: (1) PRC was not entitled to the recovery it sought from O'Brien; (2) O'Brien was not entitled to the declaration he sought from the panel; and (3) each party was responsible for its own fees because there was no prevailing party (the Arbitration Award). In February 2005, O'Brien requested indemnification from PRC on the ground that he had successfully defended all of PRC's claims in the arbitration. PRC also refused this request.

While the arbitration was pending, O'Brien filed suit against PRC in a Florida trial court. The amended complaint alleged breach of O'Brien's employment agreement, as well as a claim for specific performance of his indemnification agreement and advancement of expenses. After the Arbitration Award, O'Brien moved for summary judgment on his indemnification claim in the Florida action. PRC filed a cross-motion, arguing that the Arbitration Award acted as *res judicata* and barred O'Brien's indemnification claim. In October 2005, the Florida trial court denied O'Brien's motion, and granted PRC's cross-motion.

O'Brien appealed. In December 2006, the Florida appellate court reversed and remanded for a determination of the fees and expenses owed to O'Brien. In May 2007, on remand, the Florida trial court granted O'Brien partial summary judgment on his indemnification claim. The court set a June 2008 trial date to determine the amount of O'Brien's fees and expenses. But there was no trial, because PRC filed for bankruptcy in January 2008, and the Florida action was stayed. In June 2008, the bankruptcy court approved a plan under which O'Brien's recovery would have been severely limited.

IAC controlled PRC's defense of the Florida action from the time it was filed,

and continued to control the defense after IAC sold PRC in 2006. As IRC explained in its motion to stay this action, "[al]though IAC is not a party to the Florida Action, it has been controlling PRC's defense ... pursuant to its obligations under the agreement by which it acquired PRC. Thus, ... IAC is a real party in interest to the Florida Action."[1] In July 2008, shortly after the PRC bankruptcy plan was approved, O'Brien filed this action against IAC seeking indemnification and advancement of his attorneys' fees and expenses in the arbitration, the Florida action, and this action. The parties filed cross-motions for summary judgment. IAC's motion sought a judgment that, (1) O'Brien's claim was time barred by a three year statute of limitations; and (2) O'Brien's attorneys' fees, particularly contingent portions of those fees, were unreasonable.

The Court of Chancery granted O'Brien's motion and denied IAC's cross-motion. The trial court acknowledged that a three year statute of limitations might bar O'Brien's claim. But the Court of Chancery held that, under the exceptional circumstances of this case, it was not required to apply the analogous statute of limitations. Instead, under a traditional laches analysis, the court held that O'Brien's claim was timely. One year later, after additional submissions as to the amount owed to O'Brien, the Court of Chancery awarded O'Brien most of his requested attorneys' fees, including certain contingent fees. This appeal followed.

## DISCUSSION

### O'Brien's Claim is Not Time Barred

■ IAC argues that the Court of Chancery erred when it found O'Brien's indemnification claim to be timely by applying laches instead of the three year statute of limitations that controls contract claims at law. Laches is an equitable defense based on the maxim that "equity aids the vigilant, not those who slumber on their rights."[2] Laches is defined as an unreasonable delay in enforcing a right, which causes prejudice to the defendant.[3] The period of time that constitutes an "unreasonable delay" can range from one month to many years. The length of the delay is less important than the reasons for it.[4]

■ At common law, "[i]t was a rule ... that a right never dies; and therefore the power existed of instituting actions at any length of time...."[5] Statutes of limitation were enacted to "restrain the exercise of this power."[6] Thus, both statutes of limitations and laches bar untimely suits. Although "the limitations of actions applicable in a court of law are not controlling in equity,"[7] the Court of Chancery ordinarily will follow the applicable statute of limitations:

> Under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute of limitations at law; but if unusual conditions or extraordinary circumstances make it in-

1. Appellee's Appendix, B–155.

2. *Adams v. Jankouskas*, 452 A.2d 148, 157 (Del.1982).

3. *Reid v. Spazio*, 970 A.2d 176, 182 (Del. 2009).

4. *Whittington v. Dragon Group, L.L.C.*, 991 A.2d 1, 8 (Del.2009).

5. *Perkins v. Cartmell*, 1845 WL 493 at *5 (Del.Err. & App.).

6. *Ibid.*

7. *Reid v. Spazio*, 970 A.2d at 183.

equitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer period than that fixed by the statute, the Chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. 4 Pom. Eq. Juris. 1441.[8]

In keeping with this rule, the timeliness of indemnification claims normally is decided by reference to the three year statute of limitations set forth in 10 *Del. C.* § 8106.[9]

■ The Court of Chancery did not decide whether O'Brien's indemnification claim would have been barred by the statute of limitations.[10] Rather, the trial court determined that this is one of those few cases where the analogous statute of limitations should not be applied because of "unusual conditions or extraordinary circumstances." There is no precise definition of what constitutes unusual conditions or extraordinary circumstances. The Court of Chancery must exercise its discretion, after considering all relevant facts. But several factors that could bear on the analysis include: 1) whether the plaintiff had been pursuing his claim, through litigation or otherwise, before the statute of limitations expired; 2) whether the delay in filing suit was attributable to a material and unforeseeable change in the parties' personal or financial circumstances; 3) whether the delay in filing suit was attributable to a legal determination in another jurisdiction; 4) the extent to which the defendant was aware of, or participated in, any prior proceedings; and 5) whether, at

the time this litigation was filed, there was a bona fide dispute as to the validity of the claim.

We agree with the Court of Chancery's conclusion that unusual circumstances justified its disregarding the statute of limitations in this particular case. O'Brien promptly sought advancement and/or indemnification from PRC—first when he was named as a defendant in the arbitration, and then when the Arbitration Award declared that PRC's claims against him lacked merit. Even before the arbitration had been concluded, he filed suit against PRC in Florida. IAC, as the party ultimately responsible for any award in O'Brien's favor, controlled that litigation from the outset. Indeed, it described itself as the real party in interest.

Second, after the Florida trial court ruled against him, O'Brien could not, in good faith, proceed against IAC for more than one year, while the decision was on appeal. Perhaps he could have filed suit against IAC as a "placeholder" action, but that suit would have been stayed pending the Florida appellate court decision. Moreover, IAC already was litigating the Florida claim on behalf of PRC. To disregard this important factor would glorify form over substance.[11]

Third, PRC unexpectedly declared bankruptcy shortly after the Florida appellate court determined that O'Brien's claims were valid and enforceable. IAC argues that this factor should be disregarded because O'Brien always knew he had a claim

8. *Wright v. Scotton,* 121 A. 69, 73 (Del.1923).

9. *See: Stifel Financial Corp. v. Cochran,* 809 A.2d 555 (Del.2002); *Scharf v. Edgcomb Corp.,* 864 A.2d 909 (Del.2004).

10. The parties disagreed on the date that the claim accrued.

11. IAC argues that the Court would be disregarding PRC and IAC's separate corporate forms if it were to base its decision on the fact that IAC controlled the defense of O'Brien's Florida action. But this analysis has nothing to do with separate corporate existence. It is about the waste of resources that would have resulted if O'Brien had filed this action while the Florida action was pending.

against IAC, but chose not to file suit against IAC until after the statute of limitations had expired. It is true that O'Brien knew he had a claim against IAC. But he did not know, and there is no evidence that he had reason to suspect, that PRC would be unable to pay.

Finally, the Florida courts held that O'Brien's indemnification claim was meritorious. This combination of factors is highly unusual, and constitutes unusual circumstances that allow the Court of Chancery to ignore the analogous statute of limitations in deciding whether O'Brien's claim was barred by laches. Turning to the classic laches analysis, we agree with the trial court, for the reasons it expressed, that O'Brien's delay was not unreasonable and that IAC was not prejudiced.

### O'Brien's Attorneys' Fees Were Reasonable

The attorneys' fees the Court of Chancery ordered IAC to pay O'Brien include O'Brien's attorneys' hourly fees and certain contingency (premium or success) fees based on those hourly fees. On appeal, IAC challenges only the premium fee arrangements that would reward O'Brien's attorneys with payments above their standard hourly rates. Specifically, IAC challenges: (1) a 20% success fee to the firm that worked on the arbitration; (2) a $100 per hour increase to the same firm's hourly rates for all work after the arbitration; (3) a 50% premium above standard hourly rates to a second firm; and (4) a contingent $100 per hour premium above standard hourly rates to a third firm.

Corporate officers are entitled to indemnification only for those attorneys' fees that are "actually and reasonably incurred." [12] In determining whether fees meet that standard, Delaware courts have considered, "[1] were the expenses actually paid or incurred; [2] were the services that were rendered thought prudent and appropriate in the good faith professional judgment of competent counsel; and [3] were charges for those services made at rates, or on a basis, charged to others for the same or comparable services under comparable circumstances." [13]

█ IAC objects to the fee awards on two grounds. First it says that the premium fees were not "incurred" because they do not represent work done, but rather the success achieved. The Court of Chancery correctly rejected that argument. A premium or contingent fee is payable for work done, if that work is successful. The fact that the amount of the fee is not set until the result is obtained does not change the fact that the fee is incurred based on hours or work performed for the client.

█ IAC also objects to the amounts awarded by the trial court. We review the trial court's decision for abuse of discretion, and we find none.[14] Although an award of contingency or premium fees is unusual, the trial court recognized that fact and decided that O'Brien acted reasonably under the circumstances in making those fee arrangements. In addition, the court carefully analyzed the amounts charged and the work performed, applying the correct legal standard. Accordingly, we affirm the award on the basis of the Court of Chancery's opinion.[15]

12. 8 *Del. C.* § 145(a).

13. *Delphi Easter Ptnrs. Ltd. P'ship v. Spectacular Ptnrs., Inc.,* 1993 WL 328079, at *9 (Del. Ch.).

14. *Mahani v. Edix Media Grp., Inc.,* 935 A.2d 242, 245 (Del.2007).

15. *O'Brien v. IAC/Interactive Corp.,* 2010 WL 3385798 (Del.Ch.).

## CONCLUSION

Based on the forgoing, the judgments of the Court of Chancery are affirmed.