# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DOUGLAS M. CHERTOK and VAST VENTURES LLC, a Florida limited liability company, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 2019-0849-LWW |
| ZILLOW, INC., a Washington corporation (successor to NMD INTERACTIVE, INC., a Delaware corporation, d/b/a STREETEASY, INC.), | ) ) ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted:  July 20, 2021
Date Decided:  October 18, 2021

Michael J. Maimone, BARNES & THORNBURG LLP, Wilmington, Delaware; *Counsel for Plaintiffs Douglas M. Chertok and Vast Ventures LLC*

Geoffrey G. Grivner and Kody M. Sparks, BUCHANAN INGERSOLL & ROONEY PC, Wilmington, Delaware; *Counsel for Defendant Zillow, Inc.*

**WILL, Vice Chancellor**

This action concerns a long-running dispute centered around defendant Zillow, Inc.'s 2013 acquisition of NMD Interactive, Inc. Two former stockholders of NMD—plaintiffs Douglas M. Chertok and Vast Ventures, LLC, an entity managed by Chertok—seek the payment of certain pre-closing dividends and merger consideration in connection with the acquisition. The plaintiffs assert that Zillow has wrongfully withheld the payments and imposed conditions that are inconsistent with NMD's certificate of incorporation. Zillow argues that the merger agreement is the operative contract governing the plaintiffs' entitlement to the payments.

Under the merger agreement between Zillow and NMD, NMD stockholders who surrendered a certificate of cancellation with a letter of transmittal were entitled to receive the merger consideration. The plaintiffs refused to sign the letter of transmittal, which contained a release provision. During the six years after closing, Zillow offered to withdraw certain conditions to payment required by the merger agreement, including the release and—eventually—the letter of transmittal. The plaintiffs repeatedly rejected these offers.

Meanwhile, Chertok—a co-founder and former director of NMD—was embroiled in unrelated litigation brought against him by NMD in New York federal court. Chertok agreed to a settlement of those claims, sought to rescind the settlement agreement, appealed, was sanctioned, appealed again, and finally lost a motion for reconsideration in March 2017.

The plaintiffs filed the present action in October 2019—roughly six years after the parties' dispute first arose and the merger closed. The plaintiffs have brought a breach of contract claim under NMD's certificate of incorporation and, in the alternative, a claim for unjust enrichment against Zillow. Zillow has moved to dismiss the complaint for failure to state a claim and because it is time barred.

In this decision, I grant Zillow's motion to dismiss. The plaintiffs have brought common law claims that ultimately seek a legal remedy: payment of the merger consideration, dividends, and interest. The applicable three-year statute of limitations therefore applies and the complaint is untimely. No extraordinary circumstances or tolling doctrines save the plaintiffs' claims from being barred by their extreme tardiness. The complaint is dismissed in its entirety.

## I.    BACKGROUND

Unless otherwise noted, the following facts are based on the plaintiffs' Verified Complaint and the documents it incorporates by reference.[1]  Any additional facts are either not subject to reasonable dispute or are subject to judicial notice.[2]

### A.    Zillow and NMD Merge

Defendant Zillow, Inc., a Washington corporation, operates online real estate and home-related information marketplaces.[3]  On August 16, 2013, Zillow entered into an Agreement and Plan of Merger (the "Merger Agreement") with NMD Interactive, Inc., a Delaware corporation doing business as StreetEasy, Inc.[4]  NMD owned and operated an online real estate marketplace for listings across major metropolitan areas.[5]

---

[1] Verified Compl. ("Compl.") (Dkt. 1).  *See Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 818 (Del. 2013) (citing *Fletcher Int'l, Ltd. v. ION Geophysical Corp.*, 2011 WL 1167088, at *3 n.17 (Del. Ch. Mar. 29, 2011) ("[A] plaintiff may not reference certain documents outside the complaint and at the same time prevent the court from considering those documents' actual terms.")); *Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint . . . .").

[2] *See, e.g.*, *In re Books–A–Million, Inc. S'holders Litig.*, 2016 WL 5874974, at *1 (Del. Ch. Oct. 10, 2016) (explaining that the court may take judicial notice of "facts that are not subject to reasonable dispute" (citing *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170 (Del. 2006))); *Lima Delta Co. v. Glob. Aerospace, Inc.*, 2017 WL 4461423, at *4 (Del. Super. Oct. 5, 2017) (explaining that dockets, pleadings, and transcripts from a foreign action are subject to judicial notice).

[3] Compl. ¶ 8; Compl. Ex. D at 3.

[4] Compl. ¶¶ 1, 12; Compl. Ex. B.

[5] Compl. Ex. D at 3.

Pursuant to the Merger Agreement, Zillow acquired NMD for $50 million in cash subject to various adjustments, with NMD becoming a wholly-owned subsidiary of Zillow (the "Merger").[6] The Merger was purportedly approved by a majority of NMD's directors and a majority of its stockholders by written consent.[7] Plaintiff Douglas M. Chertok, a co-founder and former director of NMD, did not vote to approve the Merger.[8] The Merger closed on August 26, 2013.[9]

Schedule 2.3 of the Merger Agreement represented that Chertok individually held 2,450,403 shares of NMD common stock.[10] It also provided that Vast Ventures LLC ("Vast"), a Florida limited liability company of which Chertok is the sole managing member, held 169,672 shares NMD Series A preferred stock, convertible into 234,167 common shares.[11]

## B. The Letter of Transmittal Condition

On August 29, 2013, NMD sent Chertok an information statement explaining that each NMD common share was entitled to $2.19, less certain deductions.[12]

---

[6] Compl. ¶ 12; Compl. Ex. B § 1.7.1, Annex A at A-1, A-6. NMB was merged with and into Zillow on December 31, 2013. Compl. ¶ 10.

[7] Pls.' Answering Br. Ex. E at 1 (Dkt. 18).

[8] Compl. ¶¶ 11, 18, 30.

[9] *Id.* ¶ 10.

[10] *Id.* ¶ 12; Pls.' Answering Br. Ex. G at Schedule 2.3.

[11] Compl. ¶ 12; Pls.' Answering Br. Ex. G at Schedule 2.3.

[12] Compl. ¶ 13; Compl. Ex. D at 8.

5

Chertok and Vast were entitled to $5,366,382.57 and $512,825.73 for their shares, respectively.[13] In addition to the merger consideration, NMD stockholders were entitled to a dividend payment issued by NMD.[14] The dividend payment of $0.1836 per share of NMD common stock was issued before the closing of the Merger.[15] Chertok and Vast were entitled to dividend payments of $449,893.99 and $42,993.06, respectively.[16]

The information statement specified that the execution of a "Letter of Transmittal," as described in the Merger Agreement, was a condition precedent to the payment of the merger consideration.[17] Section 1.7.2(b) of the Merger Agreement provided that NMD stockholders were to receive their share of the merger consideration without interest "[u]pon surrender of a certificate for cancellation" and the execution of a "Letter of Transmittal" in the form attached as Schedule 1.7.2(b).[18] The proposed Letter of Transmittal contained a provision stating that the signing stockholder covenanted to release all "Claims" against NMD "arising or resulting from or relating, directly or indirectly, to any act, omission,

---

[13] Compl. ¶ 15.

[14] *Id.* ¶ 16.

[15] *Id.*

[16] *Id.*

[17] Compl. Ex. E at 8.

[18] Compl. Ex. B § 1.7.2.

event or occurrence prior to the Closing relating to [NMD], the [s]hares or to any rights or interest with respect to [NMD] or the [s]hares."[19]

On September 18, 2013, Chertok and Vast sent NMD appraisal demands for most of their common and preferred shares.[20] On October 24, 2013, Chertok and Vast sent NMD notices of withdrawal of their appraisal demands for all but a small portion of those shares.[21] For the shares subject to the notices of withdrawal, the plaintiffs' appraisal rights expired concurrent with the notice.[22] For the remaining shares subject to the plaintiffs' appraisal demands, the plaintiffs' appraisal rights expired 120 days after the effective time of the Merger.[23] Chertok and Vast did not execute the Letter of Transmittal containing the release or surrender any stock certificates at that time.[24]

## C.    Chertok's New York Litigation

At the time the Merger closed, Chertok was in the process of appealing a decision in New York federal court. That litigation was filed by NMD against

---

[19] Compl. Ex. E at 6.

[20] Compl. ¶ 21. Specifically, Chertok and Vast sent NMD appraisal demands for 2,400,000 of 2,450,403 common shares, and 84,836 of 169,672 preferred stock shares. *Id.*

[21] *Id.* ¶ 22. The notices of withdrawal were for all but 5,000 common shares and 500 preferred shares. *Id.*

[22] *Id.* ¶¶ 22, 24; *see* 8 *Del. C.* § 262(e).

[23] Compl. ¶ 24; *see* 8 *Del. C.* § 262(e).

[24] Compl. ¶ 29.

Chertok on August 26, 2011 in the United States District Court for the Southern District of New York (the "New York Action").[25] NMD brought claims for, among other things, cybersquatting, breach of fiduciary duty for misappropriation of domain names, and conversion of domain names.[26] NMD alleged that, after purportedly discovering that Chertok had stolen funds from the company in 2005, NMD's stockholders elected a new board of directors that excluded Chertok.[27]

Chertok answered NMD's complaint on October 10, 2011 but did not assert counterclaims.[28] On December 21, 2011, NMD filed an amended complaint, which included an allegation that Chertok had taken the position during a meet and confer that certain corporate actions—including the appointment of a new board of directors and the authorization and issuance of NMD shares—were invalid.[29] The parties subsequently reached a settlement agreement and the New York Action was dismissed on January 25, 2012.[30]

In the years that followed, Chertok repeatedly and unsuccessfully sought to vacate that settlement agreement. After Chertok moved *pro se* to vacate the

[25] Amended Complaint, *NMD InterActive, Inc. v. Chertok*, C.A. No. 1:11-cv-06011-RJS (S.D.N.Y.); Def.'s Reply Br. Ex. A (Dkt. 19).

[26] *Id.* ¶¶ 108-38.

[27] *Id.* ¶ 6.

[28] Def.'s Reply Br. Ex. B.

[29] Def.'s Reply Br. Ex. A ¶¶ 95-102.

[30] *See* Def.'s Reply Br. Ex. B.

settlement, on March 18, 2013, the Southern District denied Chertok's motion and sanctioned Chertok for his "objectively unreasonable conduct in 'propounding factual contentions concerning the settlement lacking any evidentiary support whatsoever.'"[31] After Chertok appealed, the United States Court of Appeals for the Second Circuit upheld one of the three grounds for sanctions, reversed the others, and remanded.[32]

On remand, the Southern District reduced the sanctions award, which Chertok again appealed.[33] On April 29, 2016, while Chertok's second appeal was pending, he filed a pre-motion letter with the Southern District, describing a contemplated motion to vacate the court's prior orders on the basis of fraud on the court.[34] In that letter, Chertok contended that certain disputed NMD stockholder meetings and board actions from nearly a decade earlier had not occurred.[35]

On June 7, 2016, the Second Circuit affirmed the Southern District's reduced sanctions award.[36] On June 16, 2016, the Southern District construed Chertok's pre-

[31] *NMD Interactive, Inc. v. Chertok*, 2017 WL 993069, at *1 (S.D.N.Y. Mar. 13, 2017) (quoting *NMD Interactive, Inc. v. Chertok*, 2013 WL 1385213, at *12 (S.D.N.Y. Mar. 18, 2013)).

[32] *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 301 (2d Cir. 2014).

[33] *StreetEasy, Inc. v. Chertok*, 651 F. App'x 37, 38 (2d Cir. 2016).

[34] Dkt. 23, Ex. 1A at 1.

[35] *Id.* at 1-3.

[36] *Chertok*, 651 F. App'x at 40.

motion letter as a motion seeking reargument and denied it.[37] On July 1, 2016, Chertok moved for reconsideration, and NMD moved to enjoin Chertok from future filings.[38]

The New York Action culminated in a March 13, 2017 opinion in which the Southern District denied Chertok's July 1, 2016 motion for reconsideration and confirmed the sanctions award.[39] The court declined to grant NMD's request to enjoin Chertok from making future filings but found that there was "no doubt that [Chertok] has a demonstrated history of filing vexatious, harassing, and duplicative motions for which he appears to lack an objective good-faith expectation of prevailing."[40] On March 26, 2018, the Second Circuit summarily affirmed.[41]

### D. The Parties' Payment Negotiations

Meanwhile, Zillow and the plaintiffs began what would become a six-year course of negotiations regarding payment of the merger consideration and dividends.[42] On June 4, 2015, Zillow contacted Chertok's counsel by e-mail, attaching a "short-form" Letter of Transmittal.[43] The revised Letter of Transmittal

---

[37] *See* Def.'s Reply Br. Ex. B.

[38] *See id.*

[39] *Chertok*, 2017 WL 993069, at *1-2, *5.

[40] *Id.* at *5.

[41] *StreetEasy, Inc. v. Chertok*, 730 F. App'x 4, 6 (2d Cir. 2018).

[42] Compl. ¶ 30.

[43] *Id.* ¶ 34; Compl. Ex. E at 17.

removed the release and waiver provisions that were in the prior version but included a confidentiality clause and a provision acknowledging that the stockholder would only have the right to receive the merger consideration with respect to the shares surrendered.[44] Chertok did not execute the revised Letter of Transmittal, purportedly believing that it contained a "hidden waiver."[45]

After August 26, 2019, Zillow withdrew its request for a Letter of Transmittal.[46] Zillow informed the plaintiffs that it would mail checks for the funds upon receipt of each plaintiffs' IRS Form W-9, containing the plaintiffs' tax identification numbers.[47] The plaintiffs declined to provide the information at that time.

As of October 2019, Zillow stated that it continued to hold approximately $5,733,709.96 of merger consideration and dividends for Chertok and

---

[44] *Id.* at 21.

[45] Compl. ¶ 34.

[46] *Id.* ¶ 39.

[47] *Id.*

approximately $547,926.57 for Vast Ventures.[48]  On October 11, 2019, the plaintiffs

sent Zillow executed Form W-9s.[49]  On October 24, 2019, they filed this lawsuit.[50]

On October 27, 2019, Zillow's bank sent two checks with a combined value

of $490,000 to the plaintiffs' counsel for the dividend funds owed to the plaintiffs

but continued to withhold the merger consideration.[51]  The plaintiffs' counsel

requested documentary support from Zillow to substantiate the accuracy of the

amount of the dividend and the amount of withheld merger consideration.[52]  In

November and December 2019, Zillow delivered explanations of the calculations

but no documentary support.[53]  The plaintiffs returned the checks to Zillow.[54]

### E.    This Litigation

The plaintiffs' October 24, 2019 Verified Complaint alleges that Zillow

breached NMD's certificate of incorporation by withholding the merger

consideration and dividends from the plaintiffs.[55]  The plaintiffs' theory is that the

---

[48] *Id.* ¶ 36.

[49] *Id.* ¶ 39.  The Form W-9s sent on October 11, 2019 were signed with digital signatures. Dkt. 23, Ex. 4 at 2.  Zillow informed the plaintiffs on October 23, 2019 that the bank holding the contested funds required handwritten signatures and had rejected the documents. *Id.*  The plaintiffs sent Zillow re-executed Form W-9s later that day. *Id.* at 1.

[50] Dkt. 1.

[51] Pls.' Answering Br. 4.

[52] *Id.*

[53] *Id.* at 4-5.

[54] *Id.* at 5.

[55] Compl. ¶ 3.

conditions precedent to payment in the Merger Agreement are irrelevant because NMD's certificate of incorporation creates an unconditional obligation requiring Zillow to pay the contested funds.[56] In the event of a deemed liquidation event such as a merger, NMD's certificate of incorporation required (with certain exceptions) that the consideration be distributed to stockholders on a pro rata basis.[57]

The plaintiffs assert a claim for breach of contract and specific performance based on NMD's charter, entitling the plaintiffs to "pre-judgment interest running from the date that the [m]erger [c]onsideration should have been paid to the date of payment."[58] In the alternative, the plaintiffs assert an unjust enrichment claim.[59] Chertok and Vast seek merger consideration of $5,366,382.57 and $512,825.73 and cash dividends of $449,893.99 and $42,993.06, respectively.[60] In total, the plaintiffs seek an amount no less than $6,372,095.35, plus pre-judgment interest and costs.[61]

On February 17, 2020, Zillow filed a motion to dismiss the Complaint. Then-Chancellor Bouchard heard argument on Zillow's motion to dismiss on November 4, 2020. After this action was reassigned to me, I heard reargument on July 20, 2021.

---

[56] *Id.* ¶¶ 13-17.

[57] *Id.* ¶ 14; Compl. Ex. A at 3-4.

[58] Compl. ¶¶ 42, 45.

[59] *Id.* ¶¶ 53-59.

[60] *Id.* ¶¶ 41, 43, 48.

[61] *Id.* ¶¶ 52, 59.

13

## II.  LEGAL ANALYSIS

Zillow has moved to dismiss the Complaint pursuant to Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  When considering such a motion:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[62]

In moving to dismiss, Zillow asserts that the plaintiffs are not entitled to relief because they failed to comply with the Merger Agreement.  Zillow also contends that the claims raised in the Complaint are time barred.  Because I find the threshold issue of untimeliness to be dispositive, I grant the defendant's motion and dismiss the Complaint in its entirety.[63]  I therefore need not reach the merits of the plaintiffs' claims.

---

[62] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (citation omitted).

[63] At reargument on the motion to dismiss, counsel for the plaintiffs asserted that the merits must be addressed before the court can consider whether the claims are timely.  Mot. to Dismiss Hr'g Tr. at 22-23.  I disagree.  Where laches is plain on the face of the complaint, it would be inefficient for the court to first assess the merits and then determine whether the claims were timely.  *See, e.g.*, *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *3 (Del. Ch. July 17, 1998) (granting a motion to dismiss because claims were time barred without evaluating the merits of the claims); *see also In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007) (stating that the matter of timeliness was "properly raised on a motion to dismiss").

14

### A. The Plaintiffs' Complaint Was Filed Years After the Statute of Limitations Lapsed.

As the plaintiffs point out, a laches defense is generally ill suited to resolution at the pleadings stage.[64] But where "it is clear from the face of the complaint that [laches] exist and the plaintiff can prove no set of facts to avoid it," dismissal under Rule 12(b)(6) may be appropriate.[65]

When a plaintiff brings a claim in the Court of Chancery that is legal in nature and seeks legal relief, "the statute of limitations (and its tolling doctrines) . . . appl[ies] strictly and laches [does] not apply."[66] This principle prevents a plaintiff

---

[64] Pls.' Answering Br. 25; *see, e.g.*, *Reid v. Spazio*, 970 A.2d 176, 182-83 (Del. 2009) (explaining that "affirmative defenses, such as laches, are not ordinarily well-suited for treatment" on a motion to dismiss).

[65] *Reid*, 970 A.2d at 183-84; *see also Akrout v. Jarkoy*, 2018 WL 3361401, at *11 (Del. Ch. July 10, 2018) (explaining that "[w]hen it is clear from the 'face of the complaint' that the claims are time-barred . . . it is appropriate to adjudicate the claims then and there on a motion to dismiss rather than kick the can down the road to summary judgment" (quoting *Bean v. Fursa Cap. P'rs, LP*, 2013 WL 755792, at *6 (Del. Ch. Feb. 28, 2013))); *Winklevoss Capital Fund, LLC. Liab. Co. v. Shaw*, 2019 WL 994534 at *4-6 (Del. Ch. Mar. 1, 2019) (dismissing counterclaims on a Rule 12(b)(6) motion as time barred where common law claims seeking common law remedies were filed after the statute of limitations lapsed).

[66] *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 983 (Del. Ch. 2016); *see also Scharf v. Edgcomb Corp.*, 864 A.2d 909, 911 (Del. 2004) (strictly applying the statute of limitations and not applying laches to a claim brought in the Court of Chancery that was purely legal in nature). Such claims do not ordinarily fall within the jurisdiction of this court. Section 111 of the Delaware General Corporation Law, however, provides this court with jurisdiction over a civil action to enforce a certificate of incorporation. 8 *Del. C.* § 111.

from "circumvent[ing] the statutory time bar that would have applied to the same claim if it had been brought in a court of law."[67]

Here, the plaintiffs bring a legal claim for breach of contract and a claim, in the alternative, for unjust enrichment.[68] "The statute of limitations at 10 *Del. C.* § 8106 requires a plaintiff to bring a breach of contract claim within three years of the accrual of the cause of action."[69] "The cause of action for a breach of contract accrues 'at the time of the wrongful act, even if the plaintiff is ignorant of the wrong.'"[70]

---

[67] *Kraft*, 145 A.3d at 983; *BioVeris Corp. v. Meso Scale Diagnostics, LLC*, 2017 WL 5035530 at *5 (Del. Ch. Nov. 2, 2017) (stating that a "plaintiff 'should not be placed in a potentially better position [due to filing in the Court of Chancery] to seek to avoid a statute of limitation than if she had filed in a Delaware court of law by invoking the more flexible doctrine of laches'" (quoting *Kraft*, 145 A.3d at 976)).

[68] *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) (holding that unjust enrichment claims brought with breach of contract claims are legal claims); *Dickerson v. Vills. of Five Points Prop. Owners Ass'n, Inc.*, 2020 WL 7251512, at *5 (Del. Ch. Dec. 9, 2020) (holding that if an unjust enrichment claim "serves 'as an alternate theory of recovery for a contract claim,' and money damages will make the plaintiff whole, it is a legal claim") (citation omitted); *Gelof v. Prickett, Jones & Elliott, P.A.*, 2010 WL 759663, at *1 (Del. Ch. Feb. 19, 2010) (stating that breach of contract claims are legal claims).

[69] *Am Gen. Hldgs. LLC v. Renco Grp., Inc.*, 2016 WL 4440476, at *7 (Del. Ch. Aug. 22, 2016); *see also Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724, at *16 (Del. Ch. Dec. 1, 2009) (holding that an unjust enrichment claim that bears close resemblance to a legal claim is presumptively subject to the same statute of limitations as the legal claim); *Pulieri v. Boardwalk Props., LLC*, 2015 WL 691449, at *13 (Del. Ch. Feb. 18, 2015) (applying the statute of limitations at 10 *Del. C.* § 8106 to an unjust enrichment claim).

[70] *Am Gen.*, 2016 WL 4440476, at *7 (quoting *Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999)). Chertok does not dispute that he was aware of the alleged wrongs when they occurred. *See* Compl. ¶¶ 22, 24-25, 30; Pls.' Answering Br. 2-3.

16

Although the Complaint seeks "the relief of specific performance,"[71] I need not accept that characterization. The plaintiffs' claims ultimately seek monetary relief in the form of merger consideration, dividends, and interest.[72] Where a party seeks relief in the form of a monetary payment, a legal remedy exists and the equitable remedy of specific performance is inappropriate.[73] Even if I were to view the relief sought as equitable in nature, the three-year statute of limitations would apply by analogy.[74]

It is obvious from the face of the Complaint that the plaintiffs' claims are untimely. The plaintiffs filed this action on October 24, 2019—over six years after

---

[71] Compl. ¶ 41.

[72] *Id.* ¶¶ 40-49 (asking that the court order the defendant "to specifically perform its payment obligations under the NBD [certificate of incorporation] and . . . pay the [f]unds to [the] [p]laintiffs").

[73] *See Testa v. Nixon Unif. Serv., Inc.*, 2008 WL 4958861, at *3 (Del. Ch. Nov. 21, 2008); Donald J. Wolfe & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 16.03[b][2] (2019) (explaining that specific performance is unavailable where money damages is "as complete, practical, and efficient to the ends of justice and its proper administration as the equitable remedy"). In fact, a plaintiff who seeks specific performance is admonished to act with even "greater alacrity than simply within the analogous limitations period." *Pulieri*, 2015 WL 691449, at *11.

[74] *Kraft*, 145 A.3d at 983 ("When an equitable claim seeks legal relief or a legal claim seeks equitable relief, the Court also will apply the statute of limitations by analogy."); *see also Daugherty v. Highland Cap. Mgmt., L.P.*, 2018 WL 3217738, at *7 (Del. Ch. June 29, 2018) (explaining that the court need not engage in a traditional laches analysis for a presumptively late-filed complaint); *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 1594085, at *12 (Del. Ch. June 29, 2005) ("[W]here the analogous statute of limitations at law has run, a plaintiff is barred from bringing suit without the necessity of the court engaging in a traditional laches analysis."). If a complaint is filed after the analogous limitations period, "prejudice to defendants . . . is presumed." *Baier v. Upper N.Y. Inv. Co. LLC*, 2018 WL 1791996, at *11-12 (Del. Ch. Apr. 16, 2018).

17

the Merger closed on August 26, 2013 and more than three years after the applicable statute of limitations lapsed.[75] The plaintiffs allege that their entitlement to the dividend payments arose "upon closing."[76] At the latest, the plaintiffs' entitlement to the merger consideration arose in October 2013 when they withdrew the appraisal demands for the majority of their shares and December 2013 when their remaining appraisal rights expired.[77]

## B. No Tolling Doctrines Apply and No Extraordinary Circumstances Are Present.

Because the plaintiffs' claims were filed years after the applicable statute of limitations lapsed, their claims must be dismissed as time barred "absent tolling or other extraordinary circumstances."[78] The plaintiffs argue that "unusual conditions or extraordinary circumstances" were created by the New York Action and that the doctrine of equitable tolling applies. In the alternative, the plaintiffs assert that the doctrine of quasi-estoppel prevents Zillow from asserting that the plaintiffs' claims

---

[75] Dkt. 1.

[76] Compl. ¶¶ 48-50.

[77] *Id.* ¶¶ 2, 44-45 ("Zillow was obligated to pay the Merger Consideration to Plaintiffs no later than October 24, 2013, the date that Plaintiffs withdrew their appraisal demands, or December 26, 2013, the date that all of Plaintiffs' appraisal rights expired.").

[78] *Kraft*, 145 A.3d at 982-83; *see also IAC/InterActiveCorp v. O'Brien*, 26 A.3d 174, 178 (Del. 2011); *de Adler v. Upper N.Y. Inv. Co. LLC*, 2013 WL 5874645, at *12 (Del. Ch. Oct. 31, 2013) ("Where a party files a claim after the presumptive period, the claim is likely time-barred 'except in the 'rare' and 'unusual' circumstance that a recognized tolling doctrine excuses the late filing.'") (citation omitted).

18

are time barred; that the statute of limitations was deferred because a condition precedent was not met; and that 10 *Del. C.* § 8106(c) provides the applicable statute of limitations. For the reasons discussed below, the plaintiffs' arguments are meritless.

###### 1. No Unusual Conditions or Extraordinary Circumstances Are Present to Toll the Limitations Period.

An untimely claim may be excused from dismissal on that basis in "rare" instances when the claimant can demonstrate "unusual conditions" or "extraordinary circumstances."[79] The plaintiffs argue that the New York Action and doctrine of acquiescence created such "unusual conditions or extraordinary circumstances," relying on the Delaware Supreme Court's decision in *IAC/InterActiveCorp v. O'Brien.*[80] In that decision, the court explained that "[t]here is no precise definition of what constitutes unusual conditions or extraordinary circumstances" and that the Court of Chancery "must exercise its discretion, after considering all relevant facts."[81] The court outlined five factors that this court should consider:

> (1) whether the plaintiff had been pursuing his claim, through litigation or otherwise, before the statute of limitations expired; (2) whether the delay in filing suit was attributable to a material and unforeseeable change in the parties' personal or financial circumstances; (3) whether

---

[79] *Levey v. Brownstone Asset Mgmt., LP*, 76 A.3d 764, 772 (Del. 2013); *Winklevoss*, 2019 WL 994534, at *5.

[80] 26 A.3d 174 (Del. 2011); Pls.' Answering Br. 35-38.

[81] *Id.* at 178.

the delay in filing suit was attributable to a legal determination in another jurisdiction; (4) the extent to which the defendant was aware of, or participated in, any prior proceedings; and (5) whether, at the time this litigation was filed, there was a bona fide dispute as to the validity of the claim.[82]

In *IAC*, a former CEO filed an action in Florida seeking indemnification from his employer, which had been acquired.[83] The acquirer was responsible for paying any funds granted to the CEO, "controlled that litigation from the outset," and "described itself as the real party in interest" rather than the employer.[84] The court ultimately found in the CEO's favor on summary judgement, but the employer went bankrupt before trial where the amount of funds owed were to be determined.[85] The former CEO then sued the acquirer in the Court of Chancery, which granted summary judgment in favor of the CEO despite the fact that his claims were brought after the statute of limitations had expired.[86] The Delaware Supreme Court affirmed and held that the "statute of limitations should not be applied because of 'unusual conditions or extraordinary circumstances.'"[87] The court emphasized that the CEO (1) began pursing his claims before the statute of limitations would have expired and

---

[82] *Id.*; *see also Levey*, 76 A.3d at 770.

[83] *IAC*, 26 A.3d at 176.

[84] *Id.* at 178.

[85] *Id.* at 177.

[86] *Id.* at 175-77.

[87] *Id.* at 178.

continuously pursued those claims; (2) could not have proceeded against the acquirer while the Florida action was pending; and (3) had not expected his former employer to file for bankruptcy.[88] The court further emphasized that the CEO's claims were found meritorious in the Florida action.[89] As discussed below, the present matter materially differs from the circumstances presented in *IAC*. The weight of the *IAC* factors supports a finding that no "unusual conditions" or "extraordinary circumstances" are present that would excuse the plaintiffs' delay.

> a. No Claims Were Pursued before the Statute of Limitations Expired.

The plaintiffs assert that the first *IAC* factor is satisfied because Chertok "pursued claims continuously since 2011" in the New York Action.[90] But Chertok was the defendant in that dispute and did not file any claims or counterclaims against

---

[88] *Id.* at 178-79.

[89] *Id.* at 179.

[90] Pls.' Answering Br. 38. Chertok filed complaints against NMD in this court on August 29, 2012 and on August 21, 2013. *See* Def.'s Reply Br. Exs. E, G. In the first complaint, Chertok sought declarations that he was the sole director of NMD, that the other directors were not valid directors, and that all shares issued by NMD were void. Def.'s Reply Br. Ex. E ¶¶ 52-64. In the second complaint, Chertok and Vast Ventures sought specific performance ordering NMD to issue him shares of the company and to provide him with its financial statements as allegedly agreed to in a settlement agreement in the New York Action. Def.'s Reply Br. Ex. G ¶¶ 39-47. Neither complaint was served on NMD. *See* Def.'s Reply Br. Exs. F, G. The first complaint was voluntarily withdrawn by Chertok on April 25, 2013. Def.'s Reply Br. Ex. F at 1. The second complaint was dismissed with prejudice by the court on May 13, 2014. *Id.* Ex. G at 2. Even if the statute of limitations did not begin to run until May 13, 2014, the plaintiffs did not file this action until October 24, 2019—outside of the applicable three-year statute of limitations. Dkt. 1.

21

NMD.[91]  The litigation activity he undertook was largely focused on appealing sanctions issued by the Southern District and moving to rescind a settlement agreement.[92]

The plaintiffs suggest that Chertok's litigation activity in the New York Action, their threats to pursue litigation, and their correspondence with Zillow refusing to execute releases or waivers demonstrates the timely pursuit of their claims.[93]    Those actions are not sufficient, however, to satisfy the first *IAC* factor. In *BioVeris Corp.*, this court rejected the argument that sending two letters to the defendants demanding payment and initiating negotiations before the statute of limitations expired satisfied the first *IAC* factor.[94]  The court noted that sending letters did not "rise anywhere near the same level of diligence exercised by the plaintiffs in *Levey*," who had previously filed a counterclaim against the defendants, sent a letter demanding payment and threatening pursuit of claims, filed a motion to stay in favor of arbitration, and then filed a formal demand for arbitration.[95] Similarly, in *Winklevoss*, the court found that "numerous communications" notifying

---

[91] *See supra* at 8.

[92] *See supra* at 9-10; Pls.' Answering Br. Ex. C.

[93] *See* Pls.' Answering Br. 37-38.

[94] *BioVeris Corp.*, 2017 WL 5035530, at *11-12.

[95] *Id.*; *Levey*, 76 A.3d at 766-67, 771.

the counter-defendants of claims (one of which preceded the statute of limitations) did not satisfy the first *IAC* factor.[96]

The plaintiffs' refusal to sign a Letter of Transmittal containing a general release is plainly not equivalent to actively pursuing claims.[97] Moreover, Chertok's filings in the New York Action were not "claims" in any technical sense and made no mention of the Merger, the Merger Agreement, or the issues central to the present litigation in this court. In *IAC*, by contrast, the plaintiff pursued nearly identical claims for the same relief in a foreign proceeding before the statute of limitations expired.[98]

     b.  No Change in the Plaintiffs' Personal or Financial Circumstances.

The plaintiffs make no argument about the second *IAC* factor. "Issues not briefed are deemed waived."[99] In any event, there is no indication that the delay in filing suit was attributable to a "material and unforeseeable change in the plaintiffs' personal or financial circumstances."[100] In *IAC*, the court found this factor satisfied

---

[96] 2019 WL 994534, at *7.

[97] *See Winklevoss*, 2019 WL 994534, at *7-8 (noting that a party must take "clear steps to pursue their claims" to satisfy the first *IAC* factor).

[98] *IAC*, 26 A.3d at 176-77.

[99] *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999).

[100] *IAC*, 26 A.3d at 178.

because, among other reasons, the plaintiff's former employer had unexpectedly declared bankruptcy.[101] No such changes have been alleged here.

> c. No Legal Determination Prevented the Plaintiffs from Filing Claims.

The plaintiffs were not prevented from timely filing this litigation while the New York Action was pending. The plaintiffs argue that the "delay in filing this action" should nonetheless be considered a result of the New York Action because Chertok sought to "avoid forfeiting claims under the doctrine of acquiescence."[102] The plaintiffs' argument appears to be that, if they filed this action before the conclusion of the New York Action, Chertok would have effectively acknowledged the validity of the NMD board's actions, which included the Merger.[103]

"Traditionally, the doctrine of acquiescence has included a showing that the plaintiff, by words or deed, has acknowledged the legitimacy of the defendants' conduct."[104] "A claimant is deemed to have acquiesced in a complained-of act where he [] 'has full knowledge of his rights and the material facts and . . . freely does what

---

[101] *Id.* at 178-79.

[102] Pls.' Answering Br. 38.

[103] *Id.* at 33.

[104] *Clements v. Rogers*, 790 A.2d 1222, 1238 (Del. Ch. 2001).

24

amounts to recognition of the complained of act.'"[105] But it unclear how the doctrine of acquiescence applies in this context.

Chertok was not the claimant in the New York Action and did not "indirectly challenge the Merger," despite his contentions otherwise.[106] Although NMD sought a declaratory judgment about Chertok's role at NMD and the validity of certain acts that pre-date this action,[107] Chertok did not bring claims asserting that certain NMD board actions (such as the Merger) were void. At most, in a letter to the Southern District, he expressed an intent to file a motion to vacate for fraud on the court and argued that the NMD board had "fabricated" minutes and undertaken a "fraudulent scheme to . . . illegal[ly] usurp[]" NMD.[108] Chertok never filed a formal motion but the Southern District construed the letter as such and denied it.[109] Even if Chertok had argued that his defense of the New York Action would have somehow been compromised had he timely pursued his claims in this court (which he did not), none of the legal determinations made by the Southern District or Second Circuit in the New York Action prevented that filing, as the third *IAC* factor requires.[110]

---

[105] *Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014) (quoting *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 582 (Del. Ch. 1998) (citation omitted)).

[106] Pls.' Answering Br. 33.

[107] Def.'s Reply Br. Ex. A at 21-29; *see* Def.'s Reply Br. 16.

[108] Dkt. 23, Ex. 1A.

[109] *See supra* at 10.

[110] *Compare IAC*, 26 A.3d at 178 (noting that the plaintiff could not in good faith have brought an indemnification claim in this court while the same claim was being pursued in

d. The Extent of Zillow's Involvement in the New York Action Is Unknown.

The plaintiffs argue that the fourth *IAC* factor is met because Zillow—as NMD's parent—"certainly was aware (and probably participated) in the New York [Action]."[111] Zillow disputes that assertion.[112] Zillow's awareness of or role in the New York Action is not a matter that the court could resolve at this stage without additional evidence. Nor need it be resolved. The New York Action is factually and legally distinct from this action and can hardly be characterized as a "prior proceeding."[113]

e. No Bona Fide Dispute about the "Soundness" of the Plaintiffs' Claims at the Time of Filing.

Finally, the plaintiffs maintain that the fifth *IAC* factor is satisfied because "there remains an undeniable dispute between Zillow and [the] [p]laintiffs—Zillow continues to withhold the Funds from [the] [p]laintiffs."[114] The Delaware Supreme Court "interprets a 'bona fide dispute' to mean that the claim would survive a motion

---

a foreign court); *Levey*, 76 A.3d at 771 (finding the third *IAC* factor satisfied because the plaintiff's delay in filing in Delaware was attributable to a legal determination by the New York federal court that compelled the parties to undergo mandatory arbitration).

[111] Pls.' Answering Br. 38; *see IAC*, 26 A.3d at 178.

[112] Def.'s Reply Br. 17-18.

[113] *IAC*, 26 A.3d at 176-78 (describing Florida proceedings where the same claims were brought as those filed in Delaware); *see Levey*, 76 A.3d at 766-67 (noting that the defendant in the Delaware action was the same as in the related prior foreign proceeding); *see supra* at 8-10.

[114] Pls.' Answering Br. 38.

to dismiss or, in other words, is not futile."[115] "In application, this factor is most commonly fulfilled by a previous affirmative court finding that the untimely claims are valid."[116] No such finding has been made with respect to the plaintiffs' claims, which ultimately boil down to a disagreement about when the plaintiffs' entitlement to payment arose and whether the plaintiffs are entitled to pre-judgment interest.[117] Regardless, even if a "sound" claim was pleaded, that factor alone "does not justify a finding of extraordinary circumstances when the weight of the other factors cuts against such a finding."[118]

## 2. Equitable Tolling Is Not Applicable.

The plaintiffs maintain that "equitable tolling deferred the point in time that . . . the statute of limitations began to run."[119] In *Levey*, the court explained that a statute of limitations may be equitably tolled when a "plaintiff ha[s] previously brought the claim in a different state court."[120] As the Delaware Supreme Court has articulated:

---

[115] *Daugherty*, 2018 WL 3217738, at *7 (citing *Levey*, 76 A.3d at 771–72).

[116] *Winklevoss*, 2019 WL 994534, at *9; *see also IAC*, 26 A.3d at 179; *Levey*, 76 A.3d at 772 ("The trial court's determination establishes that there is a 'bona fide dispute' over the validity of Levey's claim, and that the fifth IAC factor is satisfied.").

[117] *See* Compl. ¶¶ 40-59; Def.'s Opening Br. 2-3 (Dkt 15).

[118] *BioVeris Corp.*, 2017 WL 5035530, at *12; *see also Winklevoss*, 2019 WL 994534, at *9.

[119] Pls.' Answering Br. 41.

[120] *Id.* at 38-39; *Levey*, 76 A.3d at 772.

27

> [A]llowing a plaintiff to bring his case to a full resolution in one forum before starting the clock on his time to file in this State will discourage placeholder suits, thereby furthering judicial economy. Prosecuting separate, concurrent lawsuits in two jurisdictions is wasteful and inefficient . . . . [T]he prejudice to defendants is slight because in most cases, a defendant will be on notice that the plaintiff intends to press claims.[121]

The authorities on which the plaintiffs rely demonstrate why these principles are inapplicable here. In *Levey*, the court applied equitable tolling when a plaintiff had filed "substantially identical claims" in a foreign jurisdiction during the analogous three-year statute of limitations and later filed the same claims in the Court of Chancery.[122] Here, by contrast, the plaintiffs did not pursue their claims in a foreign jurisdiction. In *Daugherty*, the court found that equitable tolling did not apply where a plaintiff had filed "*different* claims" in a foreign jurisdiction and "could have brought those claims" in Delaware "within three years" but did not.[123] At no point did the plaintiffs assert their breach of contract or unjust enrichment claims regarding the Merger—or *any* claims for that matter—in the New York Action.

The plaintiffs also contend that their negotiations with Zillow over payment of the merger consideration are "extraneous factors" that limited their ability to file

---

[121] *Reid*, 970 A.2d at 181-82.

[122] *Levey*, 76 A.3d at 772.

[123] 2018 WL 3217738, at *10.

this action within the limitations period.[124]  But they could have filed this action at any time during those negotiations.  The plaintiffs simply chose otherwise.[125]

      3.     The Plaintiffs' Alternative Grounds for Tolling Do Not Provide a Basis to Defer the Statute of Limitations or Avoid Laches.

The plaintiffs raise three additional arguments "in the alternative" for why their Complaint should not be dismissed as untimely: quasi-estoppel, "hornbook" Delaware law on conditions precedent, and the application of 10 *Del. C.* § 8106(c).[126] Those grounds all concern the argument that Zillow imposed conditions on payment of the merger consideration such that the statute of limitations must be tolled until those conditions are satisfied.  But none can remedy the plaintiffs' unreasonable delay in bringing their claims.

First, the plaintiffs argue that "under the doctrine of quasi-estoppel, Zillow should not be permitted to argue that the plaintiffs' claims are time barred" because "Zillow improperly imposed conditions precedent upon" NMD's certificate of incorporation.[127]  The doctrine of quasi-estoppel "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position it has previously taken.

---

[124] Pls.' Answering Br. 40; *see supra* at 11.

[125] The notions of judicial economy raised in *Reid* concerned placeholder suits where a prior action is pending elsewhere.  970 A.2d at 181-82.  As discussed, no prior claims brought by the plaintiffs about the Merger were pending before this litigation was filed.

[126] Pls.' Answering Br. 41-49.

[127] *Id.* at 41.

Quasi-estoppel applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit."[128] Invoking that doctrine, the plaintiffs contend Zillow's imposition of conditions to payment "result in a claim relating to the conditions precedent being subject to the statutory maximum" for claims brought subject to 10 *Del. C.* 8106(c).[129]

This argument is illogical given that the plaintiffs' case rests on the premise that there were no conditions precedent to Zillow's payment of the merger consideration and dividends.[130] Zillow has never argued that conditions precedent exist to payment under the NMD certificate of incorporation; it argues that the Merger Agreement is the relevant contract.[131] Zillow therefore has not taken an inconsistent position that now precludes it from asserting that the plaintiffs' claims are barred by the statute of limitations.

Second, the plaintiffs' argument misinterprets 10 *Del. C.* § 8106(c). That provision provides that "an action based on a written contract, agreement, or undertaking involving at least $100,000 may be brought within a period specified in

---

[128] *Pers. Decisions, Inc. v. Bus. Plan. Sys.*, 2008 WL 1932404, at *6 (Del. Ch. May 5, 2008).

[129] Pls.' Answering Br. 42.

[130] *Id.* at 13-16.

[131] Def.'s Opening Br. 13-17.

such written contract, agreement, or undertaking provided it is brought prior to the expiration of 20 years from the accruing of the cause of such action."[132] Section 8106(c) "was intended to allow parties to contract around Delaware's otherwise applicable statute of limitations for certain actions."[133]

The plaintiffs rely on this court's decision in *Bear Stearns*, where Section 8106(c) was applied retroactively to a purchase agreement with an accrual provision.[134] There, the purchase agreement at issue directly addressed the time period for when a claim for breach of representations and warranties would accrue.[135] As a result, the accrual provision established a "period specified" in which the statute of limitations was extended and would not run until after the events specified in the accrual provision occurred.[136]

---

[132] 10 *Del. C.* § 8106(c).

[133] *Bear Stearns Mortg. Funding Tr. 2006-SLI v. EMC Mortg. LLC*, 2015 WL 139731, at *12 (Del. Ch. Jan. 12, 2015).

[134] *Id.* at *13; Pls.' Answering Br. 43, 47-49.

[135] *Bear Stearns*, 2015 WL 139731, at *14-15. The provision stated:

> Any cause of action against [EMC] or relating to or arising out of a breach by [EMC] of any representations and warranties made in this Section 7 shall accrue as to any Mortgage Loan upon (i) discovery of such breach by [EMC] or notice thereof by the party discovering such breach and (ii) failure by [EMC] to cure such breach, purchase such Mortgage Loan or substitute a qualifying Replacement Mortgage Loan pursuant to the terms hereof.

*Id.* at *4.

[136] *Id.* at *15.

31

By contrast, the conditions precedent that the plaintiffs maintain Zillow imposed do not expressly accrue or defer the statute of limitations. The Merger Agreement required that, "[u]pon surrender of a certificate to the Exchange Agent" and the execution of a Letter of Transmittal, "the holder of such certificate shall be entitled to receive in exchange therefore the portion of the merger consideration that such holder has the right to receive pursuant to the provision of Section 1.7.1."[137] It did not mention the statute of limitations or claims accrual. Even if it had, the plaintiffs' central argument in this case is that Zillow wrongfully imposed conditions to the plaintiffs' right to payment. Under the plaintiffs' own reasoning, the parties did not agree to any such conditions and, in the absence of an agreement, Section 8106(c) does not apply by its terms.

Finally, the conditions to payment imposed by Zillow did not defer the three-year limitations period.[138] The plaintiffs cite to a "long line" of Delaware decisions following "hornbook law" that state that a statute of limitations does not run until a condition precedent is satisfied or waived.[139] Because Zillow did not eliminate the

---

[137] Compl. Ex. B § 1.7.2(b).

[138] Pls.' Answering Br. 45.

[139] *Id.* at 43 (citing *Bear Sterns*, 2015 WL 139731, at *10); *Kaufman v. Albin*, 447 A.2d 761, 763 (Del. Ch. 1982) (stating that if a party's "right depends on the happening of an event in the future, the cause of action accrues, and the statute of limitations begins to run, only at the time when the event happens" (quoting 54 C.J.S. *Limitation of Actions* § 110, at 15 (1948))).

Letter of Transmittal condition until August 2019 and the final condition precedent—Form W-9s—was not satisfied by the plaintiffs until October 11, 2019, the plaintiffs maintain that laches and the statute of limitations could not begin to run until that time.[140]

But—again—the plaintiffs have brought their claims under the NMD certificate of incorporation, not the Merger Agreement. Any condition precedent allegedly contained in the Merger Agreement or mandated by Zillow is not a bar to payment based on the plaintiffs' own assertion that they "are not parties to the Merger Agreement . . . [and] therefore, are not governed by, and have no obligations (which includes satisfying conditions precedent), under the Merger Agreement."[141]

As the plaintiffs' claims arise out of NMD's certificate of incorporation, the claims accrued and the statute of limitations began to run in October and December 2013 when Zillow withheld the payment of the merger consideration and dividends from the plaintiffs. If there were no conditions to payment, as the plaintiffs

---

[140] Pls.' Answering Br. 45.

[141] *Id.* at 28; *see also* Compl. ¶ 30 ("[N]either Chertok nor Vast have any obligations under the Merger Agreement, and any purported obligations of the non-party, non-consenting stockholders – for example, the execution of LOTs, the execution of releases, and the execution of waivers – are unenforceable by Zillow.").

repeatedly argue, their right of action does not "depend[] upon some contingency or a condition precedent."[142]

## III.   CONCLUSION

For the reasons explained above, the Complaint must be dismissed as time barred because it was filed after the three-year statute of limitations expired.  No exceptional circumstances or tolling doctrine applies.  Zillow's motion to dismiss is granted.  IT IS SO ORDERED.

---

[142] *Kaufman*, 447 A.2d at 763 (quoting 51 Am. Jur. 2d, *Limitation of Actions* § 127, at 3, 6 (1970)).